IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. _____

| | | |
|---|---|---|
| SHERI H. GILBERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| NEW LINE PRODUCTIONS, INC., a California | ) | **COMPLAINT** |
| Corporation; NEW LINE HOME | ) | |
| ENTERTAINMENT, INC., a New York | ) | **(JURY TRIAL DEMANDED)** |
| Corporation; NEW LINE INTERNATIONAL | ) | |
| RELEASING, INC., a California Corporation; | ) | |
| NEW LINE TELEVISION, INC., a California | ) | |
| Corporation; NEW LINE CINEMA | ) | |
| CORPORATION, a Delaware Corporation; | ) | |
| TURNER BROADCASTING SYSTEM, INC., | ) | |
| a Georgia Corporation; WARNER HOME VIDEO | ) | |
| INC., a Delaware Corporation; WARNER BROS. | ) | |
| HOME ENTERTAINMENT INC., a Delaware | ) | |
| Corporation, formerly d/b/a Warner Home Video, | ) | |
| Inc.; WARNER BROS. ENTERTAINMENT INC., | ) | |
| a Delaware Corporation; WARNER | ) | |
| COMMUNICATIONS INC., a Delaware | ) | |
| Corporation; TIME WARNER INC., a Delaware | ) | |
| Corporation; BENDER-SPINK, INC., a California | ) | |
| Corporation; CHRIS BENDER, individually and as | ) | |
| an agent of Bender-Spink, Inc.; J.C. SPINK, | ) | |
| individually and as an agent of Bender-Spink, Inc.; | ) | |
| SPRING CREEK PRODUCTIONS, INC., a | ) | |
| California Corporation; PAULA WEINSTEIN, | ) | |
| individually and as an agent of Spring Creek | ) | |
| Productions, Inc.; AVERY PIX, INC., a California | ) | |
| Corporation; AVERY PRODUCTIONS, INC., a | ) | |
| California Corporation; AVERY PRODUCTIONS | ) | |
| LLC, a Delaware Limited Liability Company; | ) | |
| KUMAR MOBILIENGESELLSCHAFT MBH & | ) | |
| CO. PROJEKT NR. 1 KG, a German Company; | ) | |
| MICHAEL FLYNN; NUYORICAN | ) | |
| PRODUCTIONS, INC., a California Corporation; | ) | |
| JULIO CARO, individually and as an agent of | ) | |
| Nuyorican Productions, Inc.; ROBERT LUKETIC; | ) | |
| FIRECRACKER PRODUCTIONS, INC., a | ) | |

California Corporation; ANYA KOCHOFF,                    )
a/k/a Anya Kochoff Romano, f/k/a Anya                    )
Kochoff Landes, individually and as an agent of          )
Firecracker Productions, Inc.; WRITTEN IN                )
STONE, INC., a California Corporation;                   )
RICHARD LAGRAVENESE, individually and as                 )
an agent of Written in Stone, Inc.; JANE FONDA;          )
JENNIFER LOPEZ; MICHAEL VARTAN;                          )
WANDA SYKES; MIGUEL A. NUNEZ. JR.;                       )
VILLAGE ROADSHOW PICTURES                                )
ENTERTAINMENT INC., a Delaware                           )
Corporation; VILLAGE ROADSHOW, LTD, an                   )
Australian Corporation; TWENTIETH CENTURY                )
FOX INTERNATIONAL CORPORATION, a                         )
New York Corporation; NEWS CORPORATION,                  )
a Delaware Corporation; PARADISO                         )
ENTERTAINMENT, INC., a New York                          )
Corporation; ENTERTAINMENT FILM                          )
DISTRIBUTORS LTD, a British Corporation;                 )
METROPOLITAN FILMEXPORT, a French                        )
Corporation; CANWEST GLOBAL CORP., a                     )
Delaware Corporation; f/k/a Alliance Atlantis            )
Communications Inc., d/b/a Motion Picture                )
Distribution LP; ALLIANCE ATLANTIS                       )
INTERNATIONAL DISTRIBUTION, LLC, a                       )
Delaware Corporation, f/k/a Alliance Atlantis            )
Communications Inc., d/b/a Motion Picture                )
Distribution LP; ALLIANCE FILMS, INC., a                 )
Canadian Corporation, f/k/a Alliance Atlantis            )
Communications Inc., d/b/a Motion Picture                )
Distribution LP,YLEISRADIO OY, a/k/a YLE,                )
a Finnish Company; FS FILM OY, a Finnish                 )
Company; DISTRIBUTION COMPANY, S.A., an                  )
Argentinean Company; THE ENDEAVOR                        )
AGENCY, LLC, a Delaware Limited Liability                )
Company; ADRIANA ALBERGHETTI,                            )
individually and as an agent of The Endeavor             )
Agency, LLC; THE INDEPENDENT FEATURE                     )
PROJECT, INC., a New York Corporation, f/d/b/a           )
Independent Feature Project/West; FILM                   )
INDEPENDENT, INC., a California Corporation,             )
f/k/a Independent Feature Project/West; and              )
DOES 1 through 10, inclusive,                            )
                                                         )
                    Defendants.                          )
_____                 )

Plaintiff, complaining of the Defendants, hereby alleges and says as follows:

## NATURE OF THE ACTION

1.      This is a civil action for copyright infringement and related transgressions arising out of the Defendants' deliberate and unlawful preparation, production and commercial exploitation of a feature-length screenplay and theatrical motion picture, each of which is entitled "Monster in Law," and each of which clearly constitutes an unauthorized copy and/or work that is derivative of the Plaintiff's original and copyrighted feature-length motion picture screenplay entitled "When Mom's the Other Woman."

2.      The Defendants have engaged in this unlawful conduct, notwithstanding the fact that they are, or work for, sophisticated multi-national corporations whose core businesses are based upon the value and sometimes draconian enforcement of their own copyrights and other intellectual property.  See, e.g., New Line Productions, Inc., et al. v. Does 1 through 18, No. 4:04CV01578 (E.D. Mo., filed Nov. 16, 2004); Twentieth Century Fox Film Corp., et al. v. Does 1 through 12, C: 04CV4862 (N.D. Cal., filed Nov. 16, 2004).

## THE PARTIES

3.      Plaintiff, Sheri H. Gilbert, is a citizen and resident of Wilson, Wilson County, North Carolina.

4.      The Plaintiff is a graduate of Howard University where, in 1988, she received a Bachelor of Arts degree in Communications, Television and Film Directing.  Since that time, Plaintiff has worked for various media and production companies, written several "spec" scripts (i.e. scripts written "on speculation") for film and television, and regularly traveled to and from the State of California in order to make and maintain entertainment industry contacts, and to attend screenwriting conferences and film festivals.

5.      Defendant New Line Productions, Inc. ("NLP") is a corporation duly organized and existing under the laws of the State of California, with its principal place of business in New York, New York.  Upon information and belief, prior to its very recent cessation of business as an independent entity, NLP was either a division or a wholly-owned subsidiary of Defendant New Line Cinema Corporation, and was engaged in the business of producing, acquiring and distributing motion pictures for theatrical exhibition, home entertainment and other forms of distribution.  In this case, NLP filmed, produced and/or provided certain production facilities for the making of the movie "Monster-in-Law."

6.      According to the records of the U.S. Copyright Office, Defendant NLP, along with Defendant KUMAR Mobiliengesellschaft MbH & Co. projekt NR 1 KG, claims to own the copyrights to "5 film reels" of 35 mm film comprising the motion picture "Monster-in-Law."

7.      Upon information and belief, after operating as a division of Defendant New Line Cinema for the past 16 years, Defendant NLP, just weeks prior to the filing of this lawsuit, ceased doing business as an independent entity, and suddenly "merged" with Defendant WBE. Consequently, upon information and belief, Defendant Warner Bros. Entertainment Inc. is now the legal successor to NLP, and as such, has assumed all legal rights, liabilities and obligations formerly held by its predecessor, NLP.

8.      Defendant New Line Home Entertainment, Inc. ("NLHE") is a corporation duly organized and existing under the laws of the State of New York, with its principal place of business in New York, New York.  Upon information and belief, Defendant NLHE produced, licensed, sold, and/or distributed to consumers in the United States and/or around the world not only cable and television viewing rights to the movie "Monster-in-Law," but also DVD's and other video products containing the movie "Monster-in-Law."

9.     Defendant New Line International Releasing, Inc. ("NLR") is a corporation duly organized and existing under the laws of the State of California, with its principal place of business in New York, New York. Upon information and belief, Defendant NLR produced, licensed, sold, and/or distributed to consumers in the United States and/or around the world not only cable and television viewing rights to the movie "Monster-in-Law," but also DVD's and other video products containing the movie "Monster-in-Law."

10.     Upon further information and belief, Defendant NLR is either a division or a wholly-owned subsidiary of Defendant New Line Cinema.

11.     Defendant New Line Television, Inc. ("NLTV") is a corporation duly organized and existing under the laws of the State of California, with its principal place of business in New York, New York.  Upon information and belief, Defendant NLTV, along with Defendant Bender-Spink, Inc., is currently in the process of developing a television series based on the movie "Monster-in-Law" that also constitutes an infringement of the Plaintiff's copyrights in her original screenplay "When Mom's the Other Woman."

12.     Upon further information and belief, Defendant NLTV is either a division or a wholly-owned subsidiary of Defendant New Line Cinema.

13.     Defendant New Line Cinema Corporation ("NLC") is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in New York, New York.  Upon information and belief, NLP, NLHE, NLR and NLTV are all either divisions or wholly-owned subsidiaries of NLC.

14.     Defendant Turner Broadcasting System, Inc. ("TBS") is a corporation duly organized and existing under the laws of the State of Georgia, with its principal place of business in Atlanta, Georgia.  Upon information and belief, NLC is a wholly-owned subsidiary of TBS.

15.     Defendant Warner Home Video Inc. ("WHV") is a corporation duly organized and existing under the laws of the State of Delaware, which formerly maintained its principal place of business in New York, New York.  Upon information and belief, prior to its very recent cessation of business, WHV was a division of Defendant Warner Bros. Home Entertainment Inc., and distributed for home use videotapes and DVD's containing filmed entertainment product (movies, television shows, etc.) produced or otherwise acquired by Defendant Time Warner Co., Inc.'s various content-producing subsidiaries and divisions, including but not limited to Warner Bros. Pictures, Defendants New Line Cinema Corp. and New Line Productions, Inc., Defendant Turner Broadcasting System, Inc., and Home Box Office ("HBO").  In this case, upon information and belief, Defendant WHV produced, sold and/or distributed to consumers in the United States and/or around the world DVD's and other video products containing the movie "Monster-in-Law."

16.     Upon further information and belief, after operating as a division of both Defendant Time Warner, Inc. and its wholly-owned subsidiary, Defendant Warner Brothers Home Entertainment, Inc. for at least two decades, Defendant WHV ceased doing business in the United States just weeks prior to the filing of this lawsuit.

17.     Defendant Warner Bros. Home Entertainment Inc. ("WBHE") is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in New York, New York.  Upon information and belief, WBHE is the legal successor to Warner Home Video, Inc., and as such, has assumed all legal rights, liabilities and obligations formerly held by its predecessor, WHV.

18.     Defendant Warner Bros. Entertainment Inc. ("WBE") is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of

business in New York, New York.  Upon information and belief, WBHE is either a division or a wholly-owned subsidiary of WBE.

19.     Defendant Warner Communications Inc. ("WCI") is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in New York, New York.  Upon information and belief, WBHE and WBE are either divisions or wholly-owned subsidiaries of WBE.

20.     Defendant Time Warner Inc. ("Time Warner") is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in New York, New York.  Upon information and belief, WCI is a wholly-owned subsidiary of Time Warner.

21.     Plaintiff is informed and believes, and therefore alleges, that NLP, NLHE, NLR, NLTV, NLC, TBS, WHV, WBHE, WBE, WCI and Time Warner are, and at all times relevant hereto were, the alter-egos of each other, and that there exists and has existed at all times relevant hereto a unity of interest and ownership between these Defendants such that any prior separateness has ceased to exist in that these Defendants, and/or each of them, used the assets of one or more of the other Defendants for its and/or their separate, individual purposes, and caused valuable assets, property, rights and/or interests to be transferred to each other and/or third parties without adequate compensation.

22.     Defendant Bender-Spink, Inc. ("Bender-Spink") is a corporation duly organized and existing under the laws of the State of California, with its principal place of business in Beverly Hills, California.  Upon information and belief, Bender-Spink is a "diversified management and production company" that specializes in initiating and managing the careers of screenwriters, directors and actors, as well as producing a variety of film and television projects.

- 7 -

In the case of "Monster-in-Law," Benderspink is credited not only with having originally sold the idea of making the movie (purportedly written by Defendant Anya Kochoff) to NLP and NLC, but also with having served as a producer on the "Monster-in-Law" project.

23.     Upon information and belief, Defendant Bender-Spink, along with Defendant NLTV, is currently in the process of developing a television series based on the movie "Monster-in-Law" that also constitutes an infringement of the Plaintiff's copyrights in her original screenplay "When Mom's the Other Woman."

24.     Upon information and belief, Defendant Chris Bender ("Bender") is a citizen and resident of Los Angeles County, California.  Upon information and belief, Bender is Defendant's Spink's producing partner, is a co-owner of Defendant Bender-Spink, and is individually credited as a producer of "Monster-in-Law."  As such, Bender is being sued here in both his individual capacity, and as an agent of Defendant Bender-Spink.

25.     Upon information and belief, Defendant J.C. Spink ("Spink") is a citizen and resident of Los Angeles County, California.  Upon information and belief, Spink is Defendant's Bender's producing partner, is a co-owner of Defendant Bender-Spink, and is individually credited as a producer of "Monster-in-Law."  As such, Spink is being sued here in both his individual capacity, and as an agent of Defendant Bender-Spink.

26.     Defendant Spring Creek Productions, Inc. ("Spring Creek") is a corporation duly organized and existing under the laws of the State of California, with its principal place of business in Burbank, California.  Upon information and belief, Spring Creek is a production company that Defendants NLP and NLC tapped early on to serve as yet another producer on the "Monster-in-Law" project.

27.     Defendant Paula Weinstein ("Weinstein") is a citizen and resident of Los Angeles County, California.  Upon information and belief, Weinstein is the owner of Defendant Spring Creek, and is individually credited as a producer of "Monster-in-Law."  As such, Weinstein is being sued here in both her individual capacity, and as an agent of Defendant Spring Creek.

28.     Defendant Avery Pix, Inc. ("Avery Pix") is a corporation duly organized and existing under the laws of the State of California, with its principal place of business in New York, New York.  Upon information and belief, Avery Pix is one of at least two "loan-out" companies that are utilized by Defendants NLP and/or NLC, and is credited as one of the producers of "Monster-in-Law."

29.     Defendant Avery Productions, Inc. ("API") is a corporation duly organized and existing under the laws of the State of California, with its principal place of business in Burbank, California.  Upon information and belief, API is one of at least two "loan-out" companies that are utilized by Defendants NLP and/or NLC, and is credited as one of the producers of "Monster-in-Law."

30.     Defendant Avery Productions, LLC ("APL") is a limited liability company duly organized and existing under the laws of the State of Delaware, with its principal place of business in New York, New York.  Upon information and belief, APL is one of at least two "loan-out" companies that are utilized by Defendants NLP and/or NLC, and is credited as one of the producers of "Monster-in-Law."

31.     Defendant KUMAR Mobiliengesellschaft MbH & Co. projekt NR 1 KG ("KUMAR") is a business association duly organized and existed under the laws of the country of Germany.  Upon information and belief, KUMAR is a German investment company which has been credited as a producer of "Monster-in-Law," and which, along with Defendant NLP,

claims to own the copyrights to "5 film reels" of 35 mm film comprising the motion picture "Monster-in-Law."

32.     Upon information and belief, Defendant Michael Flynn ("Flynn") is a citizen and resident of Los Angeles County, California.  Flynn is credited as an executive producer of "Monster-in-Law."

33.     Defendant Nuyorican Productions, Inc. ("Nuyorican") is a corporation duly organized and existing under the laws of the State of California, with its principal place of business in Los Angeles, California.  Upon information and belief, Nuyorican is a film and television production company that, at all times relevant hereto, was co-owned and operated by Defendants Jennifer Lopez and Julio Caro.  Plaintiff is further informed and believes, and therefore alleges, that it may have been by, through or under the authority of Defendant Nuyorican that Defendant Julio Caro provided producer services to the "Monster-in-Law" project.

34.     Upon information and belief, Defendant Julio Caro ("Caro") is a citizen and resident of Los Angeles County, California.  Upon information and belief, Caro was at all times relevant hereto a co-owner of Defendant Nuyorican, and is individually credited as a producer of "Monster-in-Law."  As such, Caro is being sued here in both his individual capacity, and as an agent of Defendant Nuyorican.

35.     Upon information and belief, Defendant Robert Luketic ("Luketic") is a citizen and resident of the country of Australia.  Luketic is credited with having served as the director of "Monster-in-Law."

36.     Defendant Firecracker Productions, Inc. ("Firecracker") is a corporation duly organized and existing under the laws of the State of California, with its principal place of

business in Los Angeles, California.  Upon information and belief, Firecracker is a film and television production company that, at all times relevant hereto, was owned and operated by Defendant Anya Kochoff.  Plaintiff is further informed and believes, and therefore alleges, that it may have been by, through or under the authority of Defendant Firecracker that Defendant Anya Kochoff sold the "Monster-in-Law" screenplay and/or provided additional writing services to the producers of the "Monster-in-Law" motion picture.

37.     Defendant Anya Kochoff ("Kochoff") is a citizen and resident of Los Angeles County, California.  Upon information and belief, Kochoff is also known as Anya Kochoff Romano, and was formerly known as Anya Kochoff Landes.  Kochoff has also been known to go by the alias, "Francine Kelly."

38.     Upon information and belief, Kochoff was at all times relevant hereto a co-owner of Defendant Firecracker, and, along with Defendant Richard LaGravenese, is individually credited with having written the screenplay for "Monster-in-Law."  As such, Kochoff is being sued here in both her individual capacity, and as an agent of Defendant Firecracker.

39.     Defendant Written in Stone, Inc. ("Stone") is a corporation duly organized and existing under the laws of the State of California, with its principal place of business in Beverly Hills, California.  Upon information and belief, Stone is either a film and television production company, or a loan-out company, that, at all times relevant hereto, was owned and operated by Defendant Richard LaGravenese.  Plaintiff is further informed and believes, and therefore alleges, that it may have been by, through or under the authority of Defendant Stone that Defendant Richard LaGravenese provided writing services to the producers of the "Monster-in-Law" motion picture.

40.     Upon information and belief, Defendant Richard LaGravenese ("LaGravenese") is a citizen and resident of Los Angeles County, California.  Upon information and belief, LaGravenese was at all times relevant hereto an owner of Defendant Stone, and is individually credited as having written, along with Defendant Kochoff, the "Monster-in-Law" screenplay.  As such, LaGravenese is being sued here in both his individual capacity, and as an agent of Defendant Stone.

41.     Upon information and belief, Defendant Jane Fonda ("Fonda") is a citizen and resident of Los Angeles County, California.  For more than 40 years, Defendant Fonda has been an actor and occasional film and television producer.  In the case of "Monster-in-Law," Defendant Fonda acted in the co-leading female role opposite Defendant Jennifer Lopez.

42.     Upon information and belief, Defendant Jennifer Lopez ("Lopez") is a citizen and resident of Los Angeles County, California.  For more than 20 years, Defendant Lopez has been an actor, and more recently, a film and television producer.  In the case of "Monster-in-Law," Defendant Lopez acted in the co-leading female role opposite Defendant Fonda.

43.     Upon information and belief, Defendant Michael Vartan ("Vartan") is a citizen and resident of Los Angeles County, California.  Like Defendant Lopez, Defendant Vartan has been an actor for approximately 20 years. In the case of "Monster-in-Law," Defendant Vartan acted in the role of the leading male.

44.     Upon information and belief, Defendant Wanda Sykes ("Sykes") is a citizen and resident of Los Angeles County, California.  For at least 10 years, Defendant Sykes has been a stand-up comedian and actor in numerous films and Television shows.  In the case of "Monster-in-Law," Defendant Sykes played in the supporting role of a wisecracking friend of the character played by Defendant Fonda.

- 12 -

45.     Defendant Miguel A. Nunez, Jr. ("Nunez") is a citizen and resident of Los Angeles County, California.  Nunez is an actor who has starred in dozens of movies and televisions shows.  Nunez is also from the Plaintiff's hometown -- Wilson, North Carolina -- and went to the same high school with the Plaintiff.  For nearly 20 years, the Plaintiff and Defendant Nunez have collaborated with one another on any number of different writing projects, and it is through Defendant Nunez, among other avenues, that the Plaintiff alleges the Defendants gained access to Plaintiff's copyrighted screenplay.

46.     Defendant Village Roadshow Pictures Entertainment Inc. ("VRPE") is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in Burbank, California.  Upon information and belief, VRPE is a division of, and provides film development, production, distribution and marketing advice and services to, Defendant Village Roadshow Ltd.  In the case of "Monster-in-Law," upon information and belief, VRPE, along with Defendant Village Roadshow Ltd., is responsible for having produced, distributed, marketed and otherwise exploited the "Monster-in-Law" motion picture in the countries of Australia, New Zealand and perhaps elsewhere.

47.     Defendant Village Roadshow, Ltd. ("VRL") is a corporation duly organized and existing under the laws of the country of Australia.  Upon information and belief, VRL is an international entertainment and media with core business in cinema exhibition, theme parks, radio, film production and film distribution.  In the case of "Monster-in-Law," upon information and belief, VRL, along with Defendant VRPE, is responsible for having produced, distributed, marketed and otherwise exploited the "Monster-in-Law" motion picture in the countries of Australia, New Zealand and perhaps elsewhere.

48.     Defendant Twentieth Century Fox International Corporation ("Fox") is a corporation duly organized and existing under the laws of the State of New York, with its principal place of business in Los Angeles, California.  Upon information and belief, Fox is either a division or a wholly-owned subsidiary of Defendant News Corporation, and has unlawfully licensed, sold, or otherwise distributed to customers in foreign countries the "rights" to theatrically exhibit the motion picture "Monster-in-Law."

49.     Defendant News Corporation ("News Corp") is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in New York, New York.  Plaintiff is informed and believes, and therefore alleges, that at all times relevant hereto, Defendant Fox was either a wholly-owned subsidiary or a division of Defendant News Corporation.  Plaintiff is further informed and believes, and therefore alleges, that Fox and News Corp. are, and at all times relevant hereto were, the alter-egos of each other, and that there exists and has existed at all times relevant hereto a unity of interest and ownership between these Defendants such that any prior separateness has ceased to exist in that the Defendants, and/or each of them, used the assets of the other Defendant for its and/or their separate, individual purposes, and caused valuable assets, property, rights and/or interests to be transferred to each other and/or third parties without adequate compensation.

50.     Defendant Paradiso Entertainment, Inc. ("Paradiso") is a corporation duly organized and existing under the laws of the State of New York, with its principal place of business in New York.  Upon information and belief, Paradiso not only has unlawfully acquired and exercised the "right" to license, sell, or otherwise distribute to customers in foreign countries the "rights" to theatrically exhibit the motion picture "Monster-in-Law," but it has also

unlawfully produced, licensed, sold, and/or distributed in the same foreign territories DVD's and other video products containing the motion picture "Monster-in-Law."

51.     Defendant Entertainment Film Distributors Ltd. ("EFD") is a corporation duly organized and existing under the laws of the United Kingdom.  Upon information and belief, EFD has unlawfully acquired and exercised the "right" to license, sell, or otherwise distribute to customers in foreign countries the "rights" to theatrically exhibit the motion picture "Monster-in-Law."

52.     Defendant  Metropolitan Filmexport ("Filmexport") is a corporation duly organized and existing under the laws of the country of France.  Upon information and belief, Filmexport has unlawfully acquired and exercised the "right" to license, sell, or otherwise distribute to customers in foreign countries the "rights" to theatrically exhibit the motion picture "Monster-in-Law."

53.     Defendant CanWest Global Corp. ("CanWest") is a corporation organized and existing under the laws of the State of Delaware.  Upon information and belief, CanWest is the legal successor to Alliance Atlantis Communications, Inc., a Canadian corporation that, upon further information and belief, formerly did business as Motion Picture Distribution LP, that, in such capacity, unlawfully acquired and exercised the "right" to license, sell, or otherwise distribute to customers in foreign countries the "rights" to theatrically exhibit the motion picture "Monster-in-Law," and that unlawfully produced, licensed, sold, and/or distributed in the same foreign territories DVD's and other video products containing the motion picture "Monster-in-Law."

54.     Defendant Alliance Atlantis International Distribution, LLC ("AAID") is a limited liability company organized and existing under the laws of the State of Delaware.  Upon

information and belief, AAID is the legal successor to Alliance Atlantis Communications, Inc., a Canadian corporation that, upon further information and belief, formerly did business as Motion Picture Distribution LP, that, in such capacity, unlawfully acquired and exercised the "right" to license, sell, or otherwise distribute to customers in foreign countries the "rights" to theatrically exhibit the motion picture "Monster-in-Law," and that unlawfully produced, licensed, sold, and/or distributed in the same foreign territories DVD's and other video products containing the motion picture "Monster-in-Law."

55.     Defendant Alliance Films, Inc. ("AFI") is a corporation duly organized and existing under the laws of the country of Canada.  Upon information and belief, AFI is the legal successor to Alliance Atlantis Communications, Inc., a Canadian corporation that, upon further information and belief, formerly did business as Motion Picture Distribution LP, that, in such capacity, unlawfully acquired and exercised the "right" to license, sell, or otherwise distribute to customers in foreign countries the "rights" to theatrically exhibit the motion picture "Monster-in-Law," and that unlawfully produced, licensed, sold, and/or distributed in the same foreign territories DVD's and other video products containing the motion picture "Monster-in-Law."

56.     As the apparent legal successors to Alliance Atlantis Communications, Inc., f/d/b/a Motion Picture Distribution LP, Plaintiff is informed and believes, and therefore alleges, that CanWest, AAID and AFI have assumed all legal rights, liabilities and obligations formerly held by its predecessor, Alliance Atlantis Communications, Inc.

57.     Defendant Yleisradio Oy, a/k/a YLE ("YLE") is a corporation duly organized and existing under the laws of the country of Finland.  Upon information and belief, YLE has unlawfully acquired and exercised the "right" to license, sell, exhibit, or otherwise distribute to customers in foreign countries the television viewing rights to the movie "Monster-in-Law."

- 16 -

58.     Defendant FS Film Oy ("FS Film") is a corporation duly organized and existing under the laws of the country of Finland.  Upon information and belief, FS Film not only has unlawfully acquired and exercised the "right" to license, sell, or otherwise distribute to customers in foreign countries the "rights" to theatrically exhibit the motion picture "Monster-in-Law," but it has also unlawfully produced, licensed, sold, and/or distributed in the same foreign territories DVD's and other video products containing the motion picture "Monster-in-Law."

59.     Defendant Distribution Company, S.A. ("DCS") is a corporation duly organized and existing under the laws of the country of Argentina.  Upon information and belief, DCS has unlawfully acquired and exercised the "right" to license, sell, or otherwise distribute to customers in foreign countries the "rights" to theatrically exhibit the motion picture "Monster-in-Law."

60.     Defendant The Endeavor Agency, LLC ("Endeavor") is a limited liability company duly organized and existing under the laws of the State of Delaware, with its principal place of business in Beverly Hills, California.  Upon information and belief, Endeavor is a nationwide talent agency that, at all times relevant hereto, had as one of its partners, Defendant Adriana Alberghetti.  Plaintiff is further informed and believes, and therefore alleges, that it was by, through and with the knowledge of Defendant Alberghetti, acting on behalf of Defendant Endeavor, that Defendants Kochoff, Bender-Spink and perhaps others were permitted to perpetrate the infringement of Plaintiff's copyrights in the screenplay "When Mom's the Other Woman."

61.     Upon information and belief, Defendant Adriana Alberghetti ("Alberghetti") is a citizen and resident of Los Angeles County, California.  Upon further information and belief, Alberghetti was at all times relevant hereto a partner of Defendant Endeavor, and has been credited with putting together a substantial portion of the deal that lead to the production of

"Monster-in-Law," and to the resulting infringement of Plaintiff's copyrights in the screenplay "When Mom's the Other Woman."  As such, Alberghetti is being sued here in both her individual capacity, and as an agent of Defendant Endeavor

62.    Defendant The Independent Feature Project, Inc. ("IFP") is a corporation duly organized and existing under the laws of the State of New York, with its principal place of business in New York, New York.  Upon information and belief, at all times relevant to this Complaint, The Independent Feature Project, Inc. was the parent company of, and formerly did business in the State of California, as the Independent Feature Project/West.

63.    It is through the Independent Feature Project/West (a.k.a. "IFP/West"), among other avenues, that the Plaintiff alleges the Defendants gained access to Plaintiff's copyrighted screenplay.

64.    Defendant Film Independent, Inc. ("FIND") is a corporation duly organized and existing under the laws of the State of California, with its principal place of business in Beverly Hills, California.  Plaintiff is informed and believes, and therefore alleges, that Film Independent, Inc. is the legal successor to the Independent Feature Project/West, and as such, has assumed all legal rights, liabilities and obligations formerly held by its predecessor, the Independent Feature Project/West.

65.    Plaintiff is informed and believes, and based thereon alleges, that each of the fictitiously named Defendants identified in the caption hereinabove as Does 1 though 10, inclusive, is in some manner responsible or legally liable for the actions, damages, events, transactions and occurrences alleged herein.  The true names and capacities of such fictitiously named Defendants, whether individual, corporate, associate, or otherwise are presently unknown to the Plaintiff, and the Plaintiff will amend this Complaint to assert the true names and

capacities of such fictitiously named Defendants when the same have been ascertained.  For convenience, each reference herein to a named Defendant or to the Defendants collectively shall also refer to the Doe Defendants and each of them.

66.     Finally, Plaintiff is informed and believes, and based thereon alleges, that at all times relevant hereto each of the Defendants was the agent, partner, servant, employee, or employer of each of the other Defendants herein, that at all times relevant hereto each of the Defendants was acting within the course and scope of such agency, partnership, or employment, and that each of the Defendants is jointly and severally responsible for the damages herein alleged.

## JURISDICTION AND VENUE

67.     This is a civil action seeking monetary, declaratory, and injunctive relief for copyright infringement under the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.*; for unfair competition and trade practices under the Lanham Act, 15 U.S.C. § 1116, 1117 and 1125(a); and for the violation of various related state laws.

68.     The Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338 and 1121.

69.     The Court has supplemental jurisdiction over the related state law claims asserted herein pursuant 28 U.S.C. § 1367.

70.     Venue of this action in the United States District Court for the Eastern District of North Carolina is proper pursuant 28 U.S.C. §§ 1400(a), 1391(b) and 1391(e), in that, as herein alleged: (1) this action arises out of intentional and unlawful conduct that each defendant expressly aimed toward every judicial district in the nation, including this one, and knew or should have known would lead to infliction of substantial harm in this state; (2) a substantial part

of the transactions, occurrences and events giving rise to Plaintiff's claims occurred in this district; and (3) many of the defendants are aliens for whom venue is proper in any judicial district.

## **FACTUAL BACKGROUND**

71.     "When Mom's the Other Woman" ("THE OTHER WOMAN") is a screenplay that the Plaintiff first began to write in 1998, shortly after getting married.  The main plot thread of the screenplay -- which is loosely based upon a number of experiences that that Plaintiff personally had with her own mother-in-law -- centers around a character named Julia Rollins, who, after finally meeting and getting engaged to "Mr. Right," becomes the target of her future mother-in-law's twisted, but ultimately unsuccessful, plan to derail the impending nuptials.

72.     On August 12, 1999, the Plaintiff registered THE OTHER WOMAN with the Writers Guild of America, East (Reg. No.  129044-00).  On May 22, 2000, the Plaintiff also registered THE OTHER WOMAN with the U.S. Copyright Office, and as proof thereof received a registration certificate bearing the No. PAu 2-519-882.

73.     On several occasions prior to February 5, 2003, Plaintiff pitched and/or sent THE OTHER WOMAN to various actors, agents, directors, screenwriting contests, and movie producers in the State of California and elsewhere -- including but not limited to Defendant Nunez (an actor), Defendant IFP (a screenwriting contest sponsor), and Defendant FIND (also a screenwriting contest sponsor) -- all in the hopes of either selling THE OTHER WOMAN, selling her services as a writer, or securing the literary representation of an agent.  Although Plaintiff generally received positive feedback about the script from various individuals having experience in the film and television industry, the Plaintiff was never quite able to sell THE OTHER WOMAN or to secure a position as writer for television and film.

74.     Then, on May 13, 2005, New Line Cinema released a movie called, "Monster-in-Law" ("MIL").  The movie, which purports to be based upon a screenplay of the same name that New Line acquired from Defendant Kochoff in February, 2003, stars Defendants Fonda, Lopez, Sykes and Vartan, and centers around a character named Charlie Cantilini (played by Lopez) who has finally found the man of her dreams, only to find that his domineering mother, Viola (played by Fonda), will do just about anything to keep him from marrying her.

75.     Plaintiff was unaware that a movie known as "Monster-in-Law" had even been released until January 2006, when she received a detailed critique of THE OTHER WOMAN (known as "coverage") from an established and respected Hollywood story analyst stating, among other things, that:

  1.     **"Despite the high concept,** [THE OTHER WOMAN] **is familiar and has already been done with the recently released MONSTER-IN-LAW.**  If the writer further develops the . . . subplot, [and, by implication, drops or significantly alters, the "core story"], then [THE OTHER WOMAN] would stand apart from being just a 'nightmare mother-in-law' story.**"

  2.     **"The reader isn't advising to copy MONSTER-IN-LAW, but it's such a similarly-themed film that it's hard not to compare the two."**

  3.     **"Producers may be hesitant to do another "mother-in-law" film in the near future."**

Not long after the Plaintiff received this script critique, she rented the "Monster-in-Law" DVD and subsequently discovered more than 180 similarities between  MIL and THE OTHER WOMAN, more than 30 of which, alone, involve nearly identical lines of dialogue, and almost none of which can be written off simply as being "scenes a faire."

76.     MIL (including the motion picture and all versions of the screenplay upon which the motion picture is based) is not only substantially similar to THE OTHER WOMAN, it is strikingly similar to THE OTHER WOMAN, in that MIL involves nearly the exact same major

and minor characters, in almost the exact same predicaments, uttering (in the most important instances) nearly the exact same dialogue.

## CLAIMS FOR RELIEF

### COUNT I
### (Copyright Infringement)

77.     The allegations of Paragraphs 1 through 76 of this Complaint are re-alleged and incorporated herein by reference.

78.     THE OTHER WOMAN is an original work of authorship and copyrightable subject matter under the laws of the United States.

79.     At all times relevant hereto, the Plaintiff has been and still is the owners of all copyright rights in and to THE OTHER WOMAN, and has never assigned, licensed or otherwise transferred her copyright rights to any of the defendants, nor to any third party.

80.     On or about May 13, 2008, the Defendants began distributing MIL for theatrical exhibition in the United States.  Thereafter, the Defendants began distributing MIL:  (a) for exhibition in international markets, (b) in various home media formats, (c) for exhibition on pay-per-view and other pay television services, and (d) for exhibition on free television and basic cable programming services.  In addition, upon information and belief, the Defendants have exploited MIL in other ways, including, but not limited to, exploiting MIL through its licensing and merchandising divisions.

81.     Defendants, in writing, directing, producing, filming, acting in, editing, creating, producing, marketing and distributing MIL, have infringed the Plaintiff's copyrights by copying significant portions of the copyrightable material contained in her screenplay.  Indeed, when views as a whole, MIL and the various versions of the screenplay upon which it is based constitute a nearly wholesale and unauthorized reproduction of  THE OTHER WOMAN.

82.     Defendants have engaged in such copying of THE OTER WOMAN without the consent, approval or license of the Plaintiff.

83.     By reason of Defendant's infringement, the Plaintiff has sustained and will continue to sustain substantial injury, loss and damage to her ownership rights in the copyrighted screenplay "When Mom's the Other Woman."  Defendants' infringement of the Plaintiff copyrights has caused and will continue to cause the Plaintiff significant monetary damages.

84.     the Plaintiff is further entitled to recover from the Defendants the gains, profits and advantages they have obtained and will obtain in the future as a result of their acts of copyright infringement.

## SECOND CLAIM FOR RELIEF

(Violation of the Lanham Act § 43(a), 15 U.S.C. §1125, Unfair Competition Against All Defendants)

85.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 55 inclusive, as though fully set forth herein.

86.     Plaintiffs are informed and believe and thereon allege that Defendants have and continue to willfully misrepresent in their commercial advertising and promotional materials the origins of MIL, and by ignoring the existence of THE OTHER WOMAN upon which MIL is actually based, all with an intention to mislead and misrepresent the nature, characteristics and qualities of Defendants' goods, services or commercial activities.

As a result of such false and misleading designation, marketing and advertising, members of the public who view MIL, who purchase other derivative works and who view the Defendants' websites sites and other advertising and promotional materials are likely to be confused about the true nature, characteristics and qualities of the products they are continuing exploit.

As a direct and proximate cause of Defendants' unfair trade practices and unfair competition, Plaintiff has suffered and will continue to suffer severe injuries and harm, much of which cannot be reasonably or adequately measure or compensated in damages if such wrongful conduct is allowed to continue unabated.  The ongoing harm this wrongful conduct will continue to cause Plaintiffs is both imminent and irreparable.  Plaintiff's injuries and damages include but are not limited to loss of fair compensation for its intellectual property, loss of customers, dilution of goodwill, injury to their business reputation, and diminution of value of their intellectual property.

By reason of the foregoing, Defendants have violated and continue to violate the Lanham Act, 15 U.S.C. § 1117 and 1125.

Plaintiffs are entitled to an injunction, during the pendency of this action, and permanently (i) enjoining Defendants, their officers, agents and employees, and all persons acting in concert with them, from engaging in such further violations of the Lanham Act, 15 U.S.C. §1117 and 1125.

**WHEREFORE**, Plaintiff prays for relief as follows:

1.	As to Count I of this Complaint, Plaintiff have and recover of the Defendants all damages recoverable for the defendants' willful copyright infringement.

2.	As to Count II of this Complaint, Plaintiff have and recover of the Defendants all damages recoverable for the defendants' willful violation of the Lanham Act.

3.	That the costs of this action be taxed against the Defendants.

4.	That this case have a **Trial By Jury** on all issues so triable

5.	For such other and further relief as to the Court may seem just and proper.

- 24 -

This the 13th day of May, 2008.

LAW OFFICES OF WILLIE D. GILBERT, II

By /s/ Willie D. Gilbert, II _____
   Willie D. Gilbert, II
   Attorney for the Plaintiff
   N.C. State Bar No.: 17406
   Post Office Box 4522
   Wilson, North Carolina 2789