JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-02231 RGK (RZx) | Date | November 16, 2009 |
|---|---|---|---|
| Title | *SHERI H. GILBERT v. NEW LINE PRODUCTIONS, INC., et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | | Not Reported |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**   (IN CHAMBERS) Order Re Defendants' Motions to Dismiss (DE 369, DE 374, and DE 376)

## I. FACTUAL BACKGROUND

Plaintiff Sheri G. Gilbert ("Plaintiff") alleges that thirty-four individuals and entities listed in the Complaint (collectively "Defendants") copied her screenplay, "When Mom Is the Other Woman," and turned it into the movie "Monster in Law." Plaintiff wrote four different versions of her screenplay and obtained copyright registration for versions two, three, and four. Plaintiff alleges that "Monster in Law" infringes each one of her works or a combination thereof in violation of the Copyright Act of 1976, 17 U.S.C. §101, et seq. Plaintiff also claims that Defendants engaged in a pattern of racketeering activity related to copying her work and sharing the profits in violation of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. § 1962, et seq.

Before the Court are various Motions to Dismiss Plaintiffs' copyright and RICO claims under rule 12(b)(6). F. Rule Civ. P. 12(b)(6). The Court consolidates Defendants' Motions for the purpose of this order. For the reasons set forth below, the Court **GRANTS** Defendants' Motions to Dismiss and dismisses Plaintiff's claims in their entirety.

## II. JUDICIAL STANDARD

A party may move to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must assume allegations in the challenged complaint are true, and construe the complaint in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1996). The court may not dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Russell v. Landrieu*, 621 F.2d 1037 (9th Cir. 1980). However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Dismissal is appropriate only where the complaint lacks a cognizable legal

theory or sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Also, the court will not assume that the plaintiff can prove facts which have not been alleged in the complaint. *Associated Gen. Contractors of Cal,. Inc. v. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

The court's review of a 12(b)(6) must be limited to the contents of the complaint, but the court may also review additional materials which are properly submitted as part of the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). "A copy of a written instrument that is an exhibit to a pleading is a part of a pleading *for all purposes*." Fed. Rule Civ. Proc. 10(c) (emphasis added). Moreover, the court may consider matters subject to judicial notice under F. Rule Evid. § 201. *See Mir, M.D. v. Little Co. Of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988). And the court need not accept as true allegations that contradict documents that are attached as exhibits. *Sprewell*, 266 F.3d at 988.

## III.   DISCUSSION

To successfully establish a copyright infringement claim, Plaintiff must demonstrate 1) his ownership of the copyright, 2) the defendant's access to his work, and 3) substantial similarity between his work and the allegedly infringing material. *Berkic, v. Crichton*, 761 F.2d 1289, 1291-92 (9th Cir. 1985). Here, Defendants' Motions to Dismiss Plaintiff's copyright claims do not challenge the first and second elements. Therefore, the only issue before the Court on the Motion to Dismiss is whether as a matter of law Plaintiff may establish that Defendants' movie is substantially similar to her works. *See Funky Films Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1081 (9th Cir. 2006)("No amount of proof of access will suffice to show copying if there are no similarities.")(citation omitted).

The substantial similarity test comprises extrinsic and intrinsic components. *Id.* at 1077. The extrinsic analysis is objective and based on "specific criteria which can be listed and analyzed." *Id.* (citation omitted). For example, for the extrinsic similarity analysis, the court may compare the two works for similarities in "the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events." *Id.* (citation omitted). The plaintiff may also satisfy the extrinsic test by showing that "so many generic similarities" between the two works appear in a "particular sequence" in both works. *Metcalf v. Bochco*, 294 F.3d 1069, 1073-74 (9th Cir. 2002). But similarities between general ideas of the two works do not give rise to copyright infringement by themselves. *Funky Films*, 462 F.3d at 1078-79. Copyright law only protects "the specific details of an author's rendering of ideas." *Id.* at 1077. For the extrinsic similarity test, therefore, the Court need not take into account "scenes a faire," or concepts that "flow naturally from generic polit-lines." *Id.*

The intrinsic component is subjective and "is exclusively the province of the jury." *Id.* Nevertheless, because the plaintiff needs to satisfy both the extrinsic and intrinsic components of the substantial similarity test to establish infringement, a finding of lack of extrinsic similarity is fatal to the plaintiff's copyright case as a matter of law. *Id.*

Although the substantial similarity test is often decided on summary judgment or at trial, "when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss." *Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945); *see also Zella v. E.W. Scripps Co.*, 529 F.Supp.2d 1124, 1130 (C.D.Cal. 2007)("The Court may assess copyright infringement as a matter of law on the [] motion to dismiss.").

Here, the Court has before it all the copyrighted versions of Plaintiff's work as well as Defendants' movie. There are no disputes as to the authenticity of the works submitted to the Court on the Motion to Dismiss, and the Court has taken judicial notice of the parties' works. Upon evaluating all the works submitted to the Court on the Motion to dismiss, the Court finds that as a matter of law

Plaintiff will not be able to establish that the second, third, or fourth versions of her screenplay are substantially similar to Defendants' movie. The Court further holds that Plaintiff may not bring an action for copyright infringement based on those aspects of the first screenplay that are unique to the first version because she has not obtained copyright registration for the first version of her work. *See* 17 U.S.C. § 411(a). Similarly, Plaintiff may not rely on unpublished and preliminary drafts of Defendants' work in her infringement action. *See v. Durang*, 711 F.2d 141, 142 (9th Cir. 1983)("Copying deleted or so disguised [in later drafts] as to be unrecognizable is not copying."). Therefore, as described below in more detail, no additional set of facts, including Defendants' access to Plaintiff's work, would allow Plaintiff to prevail, and there is no reason to allow the case to advance to the summary judgment stage.

      A.    **Plaintiff Cannot Establish Substantial Similarity Between the Second Version of Her Screenplay and Defendants' Movie**

There are some generic similarities between the second version of Plaintiff's work and Defendants' movie. Both works concern an over-controlling mother in law that is determined to keep her son from marrying his new-found lover. In both works, the mother in law is a cunning character that schemes to break up the husband and wife to be. There are also a few minor similarities in those schemes. For example, both mothers in law investigate the future bride's past, hoping that they will discover something that would induce their son to end the relationship. Both mothers in law also attempt to bring another attractive woman to their son's attention to divert his focus away from the future bride. And there is some resemblance between certain minor details in each work. For example, in Plaintiff's work, the girlfriend character consults a psychic, who tells her that her lover is her "soul mate" and that a "dark woman" is present in her life. In Defendants' movie, a "crazy old lady" and a "knight in shining armor" appear during a tarot card reading game. In both works, the girlfriend character is told that her lover is homosexual. Once in each work, the mother in law kisses her son on the lips. And finally, in both works, the mothers in law use an illness as an excuse to draw their sons closer to themselves and away from the girlfriend character.[1]

---

[1] Plaintiff offers a long list of alleged similarities in her Second Amended Complaint ("SAC") comprised of 183 comparisons between Defendants' movie and each version of Plaintiff's work. Yet many of the alleged similarities point to general ideas and generic scenes. *See* (Ex. J to SAC, table entries 1, 2, 3, 4, 6, 8, 12, 13, 15, 16, 39, 60, 78, 79, 83, 91, 92, 97, 98, 102, 103, 105, 110, 112, 120, 121, 140, 141, 146, 152, 154, 159, 166, 170, 181.) Some of the comparisons rely on extrinsic material such as preliminary drafts of Defendants' screenplay and cast interviews with the media. *See* (Ex. J to SAC, table entries 5, 10, 11, 14, 18, 20, 21, 35, 39, 44, 56, 59, 67, 68, 70, 71, 73, 74, 80, 81, 88, 89, 90, 93, 100, 105, 116, 139, 143, 144, 145, 153, 155, 164, 166, 171, 173, 176, 182, 183.) *See also See v. Durang*, 711 F.2d 141, 142 (9th Cir. 1983)("Copying deleted or so disguised [in later drafts] as to be unrecognizable is not copying."). And finally, some of the comparisons do not reveal any similarity. *See* (Ex. J to SAC, table entries 23, 26, 29, 30, 31, 32, 33, 36, 41, 42, 48, 62, 63, 64, 66, 76, 84, 85, 86, 87, 104, 106, 109, 112, 132, 142, 163, 169, 174, 175, 177, 180.) The Court notes–after having reviewed the entire list–that the long list of alleged similarities does not turn this case to one where "so many generic similarities" exists between the parties' works that the extrinsic similarity test is satisfied regardless of differences in the plot, characters, mood, etc. *See Metcalf*, 294 F.3d at 1073-74. The generic similarities listed in the first paragraph of part III.A *supra* comprise the entire set of similarities that warrant discussion in this case. The remaining generic similarities, listed in this footnote, do not call for detail analysis. For example, alleged similarity No. 2 is that the works include a "female protagonist;" No. 3 is that the female protagonist has two parents (which are dead or alive in different versions of the parties' works); No. 4 is that she is the only child (which has no significance in any of the works); No. 7 is that the works contain a "female antagonist;" No. 10 is that the son lives with her mother at the beginning of Plaintiff's screenplay, but he lives on his own at the start of Defendants' movie; No. 12 is that the works include a male character; No. 13 is that the male character is in love with the female character; No. 15 is

     These similarities pale, however, in comparison to vast differences in characters, plot, mood, and themes between the two works. *See Funky Films*, 462 F.3d at 1078 (affirming summary judgment of non-similarity despite similarities that appeared significant at first but paled in light of more significant differences in plot, characters, mood, etc.). With respect to characters, Plaintiff's work depicts a man who is under his mother's control and subject to her whim. Although he appears to be a successful attorney, he lives with his mother and sleeps in a bed shaped like a car that should not typically appeal to a grown man. He abides by his mother's demands at the cost of neglecting and mistreating his lover. He answers his mother's telephone call that disrupts an intimate moment with his girlfriend. He leaves his girlfriend after she has prepared an elaborate breakfast in order to eat with his mother instead. He asks his girlfriend to take his dirty clothes to his mother's house even though he is going from his girlfriend's home to his mother's house at the same time. He cannot decline his mother's invitation to have dinner at her mother's house on Valentine's Day during which his mother spoon-feeds him the dessert. In sum, the son's character is a weak and immature man who is psychologically inseparable from his mother.

     On the other hand, the male character in Defendants' movie does not live with his mother. The movie depicts him as a successful and happy professional, a physician. Unlike his counterpart in Plaintiff's work, he does not appear submissive to his mother's every request. He ignores his mother's repeated attempts to contact him when he is busy meeting his future girlfriend for the first time. He teases his girlfriend by refusing to cease an intimate moment even when his girlfriend is talking on the phone with her mother in law. He also does not display any of the characteristics of his counterpart in Plaintiff's work that would otherwise make him seem immature and dependent on his mother.

     The mother in law characters are also quite different in the two works. Plaintiff's depiction of the mother in law is an unhappy woman that lives in a poor neighborhood and does not have anyone in the world except her son. In Defendants' work, the mother in law is a successful professional that lives in her outrageously expensive estate. Although she has just been replaced by a younger woman as a talk-show host, she still carries much of the confidence and resourcefulness that one would expect from the host of a widely watched talk-show. She has photographs with prominent politicians, heads of states, and celebrities at her house and continues to keep in touch with influential figures.

     The bride (or girlfriend) characters are also different. The character in Plaintiff's work is a journalist, who although very competent, has been unfairly denied a position as an anchorwoman. Her investigative work has unveiled a major corporate scandal. When the story breaks towards the end of the screenplay, she finally receives the well-deserved promotion. In Defendants' work, on the other hand, the girlfriend figure is a dog-walker with artistic aspirations. He character does not contain any of the professional characteristics of her counterpart in Plaintiff's work. Moreover, as described below, apart from their professions, the two women are also different in their personalities: Plaintiff's character patiently tolerates the abuse from her mother in law; Defendants' ferociously responds in kind.

     The works are also vastly different in their plots and sequence of events. Plaintiff's story begins when the young couple have already met and agreed to get married. It continues as the male character formally proposes to the bride to be. And it ends after the couple break up because of the negative influence of the son's mother in their relationship. In Defendants' work, on the other hand, the couple meet accidentally for the first time at the beginning of the movie. Eventually the son proposes to his girlfriend in front of his mother. The mother in law does everything in her power to prevent the couple

---

that the male character is a lawyer in Plaintiff's work and a doctor in Defendants'; No. 16 is that each work includes a scene where the male character is at work; No. 17 is that each male character has a mother. The Court need not exhaust the list to deliver its point.

from getting married, but she eventually changes course when she realizes that her acts are harming her son. The movie ends after the couple are married.

Moreover, Plaintiff's story is told through a flashback: the script starts in a courtroom, where the girlfriend character appears as a witness. The story of her relationship and her problems with the mother in law are then told to the audience in court (and the viewers) through her testimony. Defendants' movie, on the other hand, advances chronologically. Plaintiff's story includes a number of subplots, including a corporate scandal and a second couple with a troubled relationship. Neither sub-plots have an equivalent in Defendants' movie. Another subplot in Plaintiff's work depicts the girlfriend character's work environment and her struggle to advance professionally in light of her boss's favoritism for his own daughter. Again, Defendants' work does not contain any similar subplot.

The mood and the themes are also different. Plaintiff's work is rather dark. Characters fight, cry, and use expletives often throughout the work. There is a scene in which the son gestures as if he is about to hit his lover. The mother in law's attempts to derail the marriage are dark-hearted and psychological. The reader can sense the son's emotional struggle in feeling divided between his mother and lover. And the girl never fights back in kind with her mother in law; she tolerates the abuse until she cannot any longer and then leaves the relationship. There is also a sub-plot involving the murder of a person who filed a lawsuit against a corporation that the boyfriend character, who is a lawyer, represents. He suspects that his client may be involved in the murder. All of these elements give Plaintiff's work a heavy theme and a dark mood.

Defendants' work, in contrast, is a comedy. The mother in law character designs outrageous plans to derail her son's relationship. She puts peanuts in the girlfriend's food even though she is allergic to nuts. She cooks a terrible meal that the girlfriend has to eat out of politeness. She invites her to a black-tie party without letting her know about the dress code and then offers her a dress that is too small. To add to the comedy, the girlfriend fights back with her own plans. She makes her own dress using fabric that she tears from the curtains at her mother in law's estate. She frightens the mother in law using one of her client's dogs (she is a dog-walker). She gives the mother in law sleeping pills and leaves her asleep at the table with her face in her dinner plate all night long. The two eventually settle their differences but not until they slap each other in the face multiple times in a comic fashion–taking turns, one at a time. These events and many more give the movie a light mood and a comic theme.

Plaintiff points to a long list of alleged similarities between various versions of each party's works. (SAC Ex. J.) As listed in footnote 1, the Court has looked up each one of the 183 alleged similarities in Plaintiff's screenplays and Defendants' movie. The alleged similarities, to the extent that they are in fact similarities, flow naturally from the story of a clash between an interfering mother in law and the future bride–a story that has been told for generations. The works do not share common characters, plots, sequence of events, themes, and moods. Moreover, the generic similarities of the works do not appear in a common sequence in anyway protectable by copyright laws.[2] *See Metcalf*, 294 F.3d at 1073-74; *Shaw v. Lindheim*, 919 F.2d 1353, 1363 (9th Cir. 1990). Therefore, the Court dismisses Plaintiff's copyright infringement claim with respect to the second version of her screenplay.

**B.     The Third and Fourth Versions of Plaintiff's Screenplay Are Not Substantially Similar to Defendants' Movie**

Compared to the second version of Plaintiff's work, the third and fourth versions are much less similar to Defendants' movie. They contain the same basic story of the second version. Yet a series of subplots and secondary characters take the later versions to an entirely new direction far away from

---

[2] *See* note 1 *supra*.

Defendants' movie. For example, the third version includes a more prominent corporate scandal subplot. It also includes a more prominent depiction of a second couple whose relationship is troubled. It includes a stabbing scene. It also includes a car-theft scene in which two "thugs" shoot one of the characters in close range.[3] The fourth version opens with a gruesome suicide scene: A man in a bathroom shoots himself in the head through the mouth; blood splatters everywhere, even on his wife's face. The police arrests a person and charges him with the murder, even though the death was actually a suicide. The main couple–a journalist and an attorney–then team together to help free the innocent. These subplots and secondary characters set the third and fourth versions of Plaintiff's work too far apart from Defendants' movie to warrant any more discussion of substantial similarity between the works. As a matter of law, Plaintiff will not be able to establish that Defendants have infringed her copyrights in third and fourth versions of her work.

  C. **The First Version of Plaintiff's Screenplay Does Not Allow Plaintiff's Case to Withstand the Motion to Dismiss**

  The Copyright Act states: "[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). Accordingly, Defendants argue that Plaintiff does not have an independent copyright infringement claim based on her first screenplay because she has not obtained copyright registration for the first version of her screenplay. Plaintiff counters that she may bring a claim for the infringement of the first version of her work–even though the work is not registered–because the copyright registrations for the second, third, and fourth versions of her screenplays "relate back" to the first.

  Courts have at times found that registration of a derivative work relates back to the earlier versions when the earlier versions are included in the derivative. The cases that Plaintiff cites are only of this kind. For example, the author of a collection of works may bring an action for the infringement of one of the works in the collection, even though she has only registered the collection and not the individual works. *See, e.g., Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F.Supp. 1231, 1241 (N.D.Cal. 1995).

  Here, the "relating back" theory does not help Plaintiff's case survive the Motion to Dismiss. To the extent that the later versions relate back to the first–meaning that they include the first version in whole or in part–the Court has already evaluated the material and found that no substantial similarity exists. To the extent that plaintiff's case depends on elements specific to the first screenplay, the later works cannot relate back, because they do not *include* the elements. Therefore, Plaintiff may not resort to the first draft of her screenplay to defeat Defendants' Motion to Dismiss.

---

  [3]Plaintiff alleges that this particular scene also exists in Defendants' movie. That is not so. Among the bonus scenes included in Defendants' movie is a scene in which the bride to be imagines (while day-dreaming as a passenger in a car) that her mother in law and another person pull over next to her car in a luxury vehicle, step out of the car carrying shotguns, and shoot at her. She consequently snaps out of her dream. The scene, like the rest of the movie, is a comical exaggeration, which depicts a future bride's fear of her mother in law. The "equivalent" scene in Plaintiff's work depicts a murderous shooting of the victim of a car theft. She actually dies in the plot, and other characters, including her son, sadly mourn her death. The two scenes are nothing alike in their expression of events or the purpose they serve in each work. Plaintiff's Complaint is replete with numerous other comparisons of this kind. *See* note 1 *supra*. Plaintiff may not prevail in a copyright action by mixing and matching a string of events that take place in each work, regardless of their expressive function and solely based on the fact that the scenes share a common idea despite their many differences. *See Berkic*, 761 F.2d at 1293; *Metcalf*, 294 F.3d at 1074.

**D.    The Court Dismisses Plaintiff's RICO Claims**

Plaintiff's RICO claims are based on copyright infringement. Since the Court finds that Plaintiff cannot prevail in her copyright claims, the Court also dismisses Plaintiff's RICO claims.

## IV.    CONCLUSION

Since Plaintiff may only rely on the content of her works to establish substantial similarity to Defendants' movie, and since the Court has already found that Plaintiff may not establish substantial similarity based on her works, no additional facts would allow Plaintiff to prevail in her case. Therefore, there is no reason to allow the case to continue to the summary judgment stage. Therefor, the Court **GRANTS** Defendants' Motions to Dismiss and dismisses Plaintiff's claims in their entirety.

**IT IS SO ORDERED.**

_____ : _____
Initials of Preparer   slw