

1  **Sheri H. Gilbert, Pro Se**
2  Post Office Box 4522
   Wilson, North Carolina 27893
3  Telephone: (252) 237-2463
4  Facsimile: (252) 237-2463

FILED
CLERK J.S. DISTRICT COURT

JAN - 7 2011

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

5

6

7

8          UNITED STATES DISTRICT COURT

9    CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11  Sheri H. Gilbert, an individual,        ) CASE NO. 2:09-cv-02231 RGK (RZ)
                                            )
12          Plaintiff,                      )
                                            )
13      v.                                  )
                                            )
14  NEW LINE PRODUCTIONS, INC., a           ) **NOTICE OF ERRATA RE:**
    California Corporation; NEW LINE        ) **DKT. No. 654 -- PLAINTIFF'S**
15  HOME ENTERTAINMENT, INC., a             ) **AMENDED NOTICE OF APPEAL**
    New York Corporation; NEW LINE          )
16  INTERNATIONAL RELEASING,                )
    INC., a California Corporation; NEW     )
17  LINE TELEVISION, INC., a California     )
18  Corporation; NEW LINE CINEMA            )
    CORPORATION, a Delaware                 )
19  Corporation; TURNER                     )
20  BROADCASTING SYSTEM, INC., a            )
    Georgia Corporation; WARNER             )
21  HOME VIDEO, INC., a Delaware            )
22  Corporation; WARNER BROS. HOME          )
    ENTERTAINMENT INC., a Delaware          )
23  Corporation, formerly d/b/a Warner Home )
24  Video, Inc.; WARNER BROS.               )
    ENTERTAINMENT INC., a Delaware          )
25  Corporation; WARNER                     )
26  COMMUNICATIONS INC., a Delaware         )
    Corporation; TIME WARNER, INC., a       )
27  Delaware Corporation; BENDER-SPINK,     )
28

-1-

1 INC., a California Corporation; CHRIS )
2 BENDER, individually and as an agent of )
Bender-Spink, Inc.; J.C. SPINK, )
3 individually and as an agent of Bender- )
4 Spink, Inc.; SPRING CREEK )
PRODUCTIONS, INC., a California )
5 Corporation; PAULA WEINSTEIN, )
6 individually and as an agent of Spring )
Creek Productions, Inc.; AVERY PIX, )
7 INC., a California Corporation; KUMAR )
8 MOBILIENGESELLSCHAFT MBH & )
CO. PROJEKT NR. 1 KG, a German )
9 Company; MICHAEL FLYNN; )
10 NUYORICAN PRODUCTIONS, INC., a )
California Corporation; JULIO CARO; )
11 ROBERT LUKETIC; FIRECRACKER )
12 PRODUCTIONS, INC., a California )
Corporation; ANYA KOCHOFF, a/k/a )
13 Anya Kochoff Landes, individually and as )
14 an agent of Firecracker Productions, Inc.; )
WRITTEN IN STONE, INC., a California )
15 Corporation; RICHARD )
16 LAGRAVENESE, individually and as an )
agent of Written in Stone, Inc.; JANE )
17 FONDA; JENNIFER LOPEZ, )
18 individually and as an agent of Nuyorican )
Productions, Inc.; MICHAEL VARTAN; )
19 WANDA SYKES; MIGUEL A. NUNEZ, )
20 JR.; VILLAGE ROADSHOW, LTD, an )
Australian Corporation; SANTA FE )
21 PRODICTIONS NV, a Belgian Public )
22 Limited Liability Company, d/b/a )
Paradiso Entertainment; PARADISO )
23 ENTERTAINMENT NEDERLANDS )
24 BV, a Dutch Private Limited Company; )
PARADISO HOME )
25 ENTERTAINMENT, a Dutch Company; )
26 ENTERTAINMENT FILM )
DISTRIBUTORS LTD, a British )
27 Corporation; METROPOLITAN )
28 FILMEXPORT, a French Corporation; )

-2-

CW MEDIA, INC., a Canadian Corporation, f/k/a Alliance Atlantis Communications Inc., d/b/a Motion Picture Distribution LP; CW MEDIA SALES INC./CW VENTES MEDIA INC., a Canadian Corporation; CANWEST GLOBAL COMMUNICATIONS CORP., a Canadian Corporation; ALLIANCE FILMS, INC., a Canadian Corporation, f/k/a Alliance Atlantis Communications Inc., d/b/a Motion Picture Distribution LP; YLEISRADIO OY, a/k/a YLE, a Finnish Company; FS FILM OY, a Finnish Company; DISTRIBUTION COMPANY, S.A., an Argentinean Company; THE ENDEAVOR AGENCY, LLC, a Delaware Limited Liability Company; ADRIANA ALBERGHETTI, individually and as an agent of the Endeavor Agency, LLC; FILM INDEPENDENT, INC., a California Corporation, f/k/a Independent Feature Project/West; and DOES 1 through 10, inclusive,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

-3-

**TO THE CLERK, THE COURT, THE PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT Plaintiff Sheri H. Gilbert hereby submits this Notice of Errata regarding Plaintiff's Amended Notice of Appeal, which originally was filed by the Court on January 3, 2011 (see Docket Entry No. 654).

Upon reviewing Plaintiff's Amended Notice of Appeal as it appears under Docket Entry No. 654 on PACER, Plaintiff discovered that pages 2, 3, and 5 of the Amended Notice of Appeal itself, as originally prepared by the Plaintiff, were not included among the pages of the document that has been electronically filed by the Court. Although Plaintiff believes that pages 2 and 3 of her Amended Notice Appeal were included among the pages of that document as it was presented to the Court for filing, and, therefore, does not know why those pages do not appear in Docket Entry No. 654, Plaintiff has discovered that after photocopying page 5 of the Amended Notice of Appeal (the signature page) in order to comply with the Court's requirement of providing a second copy of a notice of appeal when filing such a notice by mail, Plaintiff inadvertently left page of 5 of her Amended Notice of Appeal on the photocopier and failed to include it among the pages of Plaintiff's Amended Notice of Appeal as it originally was presented to the Court for filing.

Based upon the foregoing, and in order to correct the record, Plaintiff hereby files as an attachment hereto a complete copy of Plaintiff's Amended Notice of Appeal.

Respectfully submitted this 6th day of January, 2011.

Sheri H. Gilbert, Pro Se Appellant
Post Office Box 4522
Wilson, North Carolina 27893

# SERVICE LIST

## Sheri H. Gilbert v. New Line Productions, Inc., et al.

Lisa A. Callif, Esq.
Dean R. Cheley, Esq.
The Law Offices of Donaldson & Callif
400 S. Beverly Drive, Suite 400
Beverly Hills, CA  90212
Email:  lisa@donaldsoncallif.com

*Attorneys for Defendant Film Independent, Inc.*

Allison S. Brehm, Esq.
Lee S. Brenner, Esq.
White O'Connor Fink & Brenner, LLP
10100 Santa Monica Boulevard, 23rd Floor
Los Angeles, CA  90067-4008
Email:  abrehm@whiteo.com
Email:  lbrenner@whiteo.com

*Attorneys for Defendants New Line Productions, Inc., New Line Home Entertainment, Inc., New Line International Releasing, Inc., New Line Television, Inc., New Line Cinema Corporation, Turner Broadcasting System, Inc., Warner Home Video Inc., Warner Bros. Home Entertainment Inc., Warner Bros. Entertainment Inc., Warner Communications Inc., Time Warner Inc., Bender-Spink, Inc., Chris Bender, J.C. Spink, Spring Creek Productions, Inc., Paula Weinstein, Avery Pix, Inc., Michael Flynn, Nuyorican Productions, Inc., Julio Caro, Robert Luketic, Firecracker Productions, Inc., Anya Kochoff, Written in Stone, Inc., Richard LaGravenese, Jane Fonda, Jennifer Lopez, Michael Vartan, Wanda Sykes, CW Media, Inc., Distribution Company, S.A., Kumar Mobiliengesellschaft MbH & Co projekt NR 1 KG, The Endeavor Agency, LLC, and Adriana Alberghetti*

# ATTACHMENT
# TO

# Notice of Errata Re:
# Docket Entry No. 654 -- Plaintiff's Amended Notice of Appeal

**Sheri H. Gilbert, Pro Se**
Post Office Box 4522
Wilson, North Carolina 27893
Telephone: (252) 237-2463
Facsimile: (252) 237-2463

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Sheri H. Gilbert, an individual, | CASE NO. 2:09-cv-02231 RGK (RZ) |
| Plaintiff, | |
| v. | |
| NEW LINE PRODUCTIONS, INC., a California Corporation; NEW LINE HOME ENTERTAINMENT, INC., a New York Corporation; NEW LINE INTERNATIONAL RELEASING, INC., a California Corporation; NEW LINE TELEVISION, INC., a California Corporation; NEW LINE CINEMA CORPORATION, a Delaware Corporation; TURNER BROADCASTING SYSTEM, INC., a Georgia Corporation; WARNER HOME VIDEO, INC., a Delaware Corporation; WARNER BROS. HOME ENTERTAINMENT INC., a Delaware Corporation, formerly d/b/a Warner Home Video, Inc.; WARNER BROS. ENTERTAINMENT INC., a Delaware Corporation; WARNER COMMUNICATIONS INC., a Delaware Corporation; TIME WARNER, INC., a Delaware Corporation; BENDER-SPINK, | **PLAINTIFF'S AMENDED NOTICE OF APPEAL** |

-1-

1  INC., a California Corporation; CHRIS )
2  BENDER, individually and as an agent of )
   Bender-Spink, Inc.; J.C. SPINK, )
3  individually and as an agent of Bender- )
4  Spink, Inc.; SPRING CREEK )
   PRODUCTIONS, INC., a California )
5  Corporation; PAULA WEINSTEIN, )
6  individually and as an agent of Spring )
   Creek Productions, Inc.; AVERY PIX, )
7  INC., a California Corporation; KUMAR )
8  MOBILIENGESELLSCHAFT MBH & )
   CO. PROJEKT NR. 1 KG, a German )
9  Company; MICHAEL FLYNN; )
   NUYORICAN PRODUCTIONS, INC., a )
10 California Corporation; JULIO CARO; )
11 ROBERT LUKETIC; FIRECRACKER )
   PRODUCTIONS, INC., a California )
12 Corporation; ANYA KOCHOFF, a/k/a )
13 Anya Kochoff Landes, individually and as )
14 an agent of Firecracker Productions, Inc.; )
   WRITTEN IN STONE, INC., a California )
15 Corporation; RICHARD )
16 LAGRAVENESE, individually and as an )
   agent of Written in Stone, Inc.; JANE )
17 FONDA; JENNIFER LOPEZ, )
18 individually and as an agent of Nuyorican )
   Productions, Inc.; MICHAEL VARTAN; )
19 WANDA SYKES; MIGUEL A. NUNEZ, )
20 JR.; VILLAGE ROADSHOW, LTD, an )
   Australian Corporation; SANTA FE )
21 PRODICTIONS NV, a Belgian Public )
22 Limited Liability Company, d/b/a )
   Paradiso Entertainment; PARADISO )
23 ENTERTAINMENT NEDERLANDS )
24 BV, a Dutch Private Limited Company; )
   PARADISO HOME )
25 ENTERTAINMENT, a Dutch Company; )
26 ENTERTAINMENT FILM )
   DISTRIBUTORS LTD, a British )
27 Corporation; METROPOLITAN )
28 FILMEXPORT, a French Corporation; )

-2-

1  CW MEDIA, INC., a Canadian
2  Corporation, f/k/a Alliance Atlantis
   Communications Inc., d/b/a Motion
3  Picture Distribution LP; CW MEDIA
4  SALES INC./CW VENTES MEDIA
   INC., a Canadian Corporation;
5  CANWEST GLOBAL
6  COMMUNICATIONS CORP., a
   Canadian Corporation; ALLIANCE
7  FILMS, INC., a Canadian Corporation,
8  f/k/a Alliance Atlantis Communications
   Inc., d/b/a Motion Picture Distribution LP;
9  YLEISRADIO OY, a/k/a YLE, a Finnish
10 Company; FS FILM OY, a Finnish
   Company; DISTRIBUTION COMPANY,
11 S.A., an Argentinean Company; THE
12 ENDEAVOR AGENCY, LLC, a
   Delaware Limited Liability Company;
13 ADRIANA ALBERGHETTI, individually
14 and as an agent of the Endeavor Agency,
   LLC; FILM INDEPENDENT, INC., a
15 California Corporation, f/k/a Independent
16 Feature Project/West; and DOES 1
   through 10, inclusive,
17
18          Defendants.
19
20
21
22
23
24
25
26
27
28

Notice is hereby given that Sheri H. Gilbert, Plaintiff in the above-named case, hereby appeals to the United States Court of Appeals for the Ninth Circuit from the following rulings and determinations:

1.    The March 31, 2009, Order TRANSFERRING this action from the United States District Court for the Eastern District of North Carolina to the United States District Court for the Central District of California (Dkt. No. 263);

2.    The November 11, 2009, Order and the November 23, 2009, Judgment DISMISSING Plaintiff's Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. Nos. 421 and 425);

3.    That portion of the February 17, 2010 Order which DENIED Plaintiff's Motion for Reconsideration of the Order and Judgment dismissing Plaintiff's Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 448);

4.    The June 3, 2010, Order GRANTING the motion of fifteen defendants for Judgment on the Pleadings, and DENYING the Plaintiff's motion to amend the Second Amended Complaint (Dkt. No. 497);

5.    The July 2, 2010, Order DENYING Plaintiff's motion to re-open discovery and to extend all dates in the Court's May 28, 2010 scheduling order by 90 days (Dkt. No. 558); and

6.    The August 13, 2010, Order GRANTING summary judgment in favor of the defendants, and DISMISSING Plaintiff's Second Amended Complaint in its entirety (Dkt. No. 624).

7.    The September 22, 2010, Judgment DISMISSING Plaintiff's Second Amended Complaint in its entirety and AWARDING prevailing party costs to the defendants (Dkt. No. 629).

8.    The December 2, 2010, Bill of Costs entered by the Clerk of Court (Dkt. No. 651).

9.    The December 6, 2010, Order GRANTING defendants' motion for attorneys' fees and costs (Dkt. No. 650).

Respectfully submitted this 30th day of December, 2010.

Sheri H. Gilbert, Pro Se Appellant
Post Office Box 4522
Wilson, North Carolina 27893

**SERVICE LIST**

**Sheri H. Gilbert v. New Line Productions, Inc., et al.**

Lisa A. Callif, Esq.
Dean R. Cheley, Esq.
The Law Offices of Donaldson & Callif
400 S. Beverly Drive, Suite 400
Beverly Hills, CA  90212
Email: lisa@donaldsoncallif.com

*Attorneys for Defendant Film Independent, Inc.*


Allison S. Brehm, Esq.
Lee S. Brenner, Esq.
White O'Connor Fink & Brenner, LLP
10100 Santa Monica Boulevard, 23rd Floor
Los Angeles, CA  90067-4008
Email: abrehm@whiteo.com
Email: lbrenner@whiteo.com

*Attorneys for Defendants New Line Productions, Inc., New Line Home Entertainment, Inc., New Line International Releasing, Inc., New Line Television, Inc., New Line Cinema Corporation, Turner Broadcasting System, Inc., Warner Home Video Inc., Warner Bros. Home Entertainment Inc., Warner Bros. Entertainment Inc., Warner Communications Inc., Time Warner Inc., Bender-Spink, Inc., Chris Bender, J.C. Spink, Spring Creek Productions, Inc., Paula Weinstein, Avery Pix, Inc., Michael Flynn, Nuyorican Productions, Inc., Julio Caro, Robert Luketic, Firecracker Productions, Inc., Anya Kochoff, Written in Stone, Inc., Richard LaGravenese, Jane Fonda, Jennifer Lopez, Michael Vartan, Wanda Sykes, CW Media, Inc., Distribution Company, S.A., Kumar Mobiliengesellschaft MbH & Co projekt NR 1 KG, The Endeavor Agency, LLC, and Adriana Alberghetti*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:08-CV-223-H

SHERI H. GILBERT,              )
                              )
        Plaintiff,            )
                              )
    v.                        )
                              )          **ORDER**
NEW LINE PRODUCTIONS, INC., a )
California Corporation, <u>et al.</u>, )
                              )
        Defendants.           )
                              )
                              )

        This matter is before the court on nineteen various motions,

including but not limited to motions to dismiss, motions to transfer,

and a motion to amend the First Amended Complaint.  Responses and

replies have been filed, and this matter is ripe for adjudication.

### STATEMENT OF THE CASE

        Plaintiff commenced this action on May 13, 2008, by filing a

complaint in this court against more than 50 defendants.  On October

21, 2008, she filed an amended complaint alleging claims for

copyright infringement, violations of the Lanham Act, violations of

the Racketeer Influenced and Corrupt Organizations Act, and unfair

business practices under both California and North Carolina law.  As

detailed in the First Amended Complaint, this action stems from

plaintiff's allegations that defendants misappropriated and copied

one or more versions of plaintiff's copyrighted screenplay, "When Mom's the Other Woman" in order to write and produce the motion picture "Monster-in-Law." Plaintiff claims that between 1999 and 2002, she submitted various versions of her screenplay to agents, actors, directors, screenwriting contests and movie producers in California. Plaintiff claims that the 2005 film, "Monster-in-Law," infringes upon her copyrighted screenplay and alleges the existence of more than 180 similarities between her copyrighted work and "Monster-in-Law."

Relying on 28 U.S.C. §§ 1404(a) and 1406(a), thirty-five of the defendants ("the moving defendants") move to transfer this action to the Central District of California. In the alternative, twenty-three of the moving defendants seek dismissal of the claims against them for lack of personal jurisdiction and improper venue.[1]

---

[1] On November 6, 2008, a motion was filed by thirty-two of the defendants seeking transfer pursuant to 28 U.S.C. §§ 1404(a) or 1406(a) or, in the alternative, dismissal of the claims against twenty of the named defendants for lack of personal jurisdiction and improper venue. (Mot. Transfer & Alternative Mot. Dismiss [DE #186].) Defendants Film Independent, Inc., and Kumar Mobiliengesellschaft MBH & Co. Projekt Nr. 1 KG have moved to join that motion in its entirety (Mot. Dismiss or Transfer [DE #191] & Mot. Adopt Mot. Dismiss or Transfer [DE #207 & 208]), and defendant Distribution Co. Argentina SA seeks to join the motion to dismiss for lack of jurisdiction and improper venue (Mot. Adopt Mot. Dismiss [DE #202]) For good cause shown, the court hereby GRANTS the above motions to join and/or adopt  [DE #191, 202, 207 and 208].

## COURT'S DISCUSSION

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

"A district court has broad discretion when considering a motion to transfer." North Carolina v. Blackburn, No. 5:06-CV-300-D, 2007 U.S. Dist. LEXIS 92131, *6 (E.D.N.C. 2007); Fretwell v. Kansas City Life Ins., No. 7:07-CV-54-H (E.D.N.C. 2008); see also 28 U.S.C. § 1404(a); Stewart Org., Inc. v. Ricoh Com., 487 U.S. 22, 29 (1988); Brock v. Entre Computer Ctrs., Inc., 933 F.2d 1253, 1257 (4th Cir. 1991); Jenkins v. Albuquerque Lonestar Freightliner, LLC, 464 F. Supp. 2d 491, 493 (E.D.N.C. 2006). Furthermore, this court need not address the issues of personal jurisdiction and venue before addressing the motion to transfer pursuant to 28 U.S.C. § 1404(a). See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422 (2007).

This action originally could have been brought in the United States District Court for the Central District of California, the proposed transferee court. The Central District of California would have subject matter jurisdiction over this action, see 28 U.S.C. §§ 1331 (federal question), 1338(a) (copyright), 1338(b) (unfair competition), 1367 (supplemental jurisdiction), 18 U.S.C. § 1964

3

(RICO claims), as well as personal jurisdiction over the defendants.[2]

Venue also would be proper in that district as many (if not all) of the alleged acts of infringement occurred in the Los Angeles, California area. See 28 U.S.C. § 1391(b) (laying venue in a judicial district where a substantial part of the events giving rise to the claim occurred).

"Courts sometimes apply any of several multi-factor tests in deciding motions to transfer." Blackburn, 2007 U.S. Dist. LEXIS 92131, *6 (citing as an example Hardee's Food Sys., Inc. v. Rosenblatt, 44 F. Supp. 2d 767, 770 (E.D.N.C. 1998)). Among the factors included are (1) plaintiff's initial choice of forum; (2) the residence of the parties; (3) the relative ease of access of proof; (4) the availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses; (5) the possibility of a view; (6) the enforceability of a judgment, if obtained; (7) the relative advantages and obstacles to a fair trial; (8) other practical problems that make a trial easy,

---

2Excluding the Doe defendants, forty-seven defendants remain in this case, following various dismissals by plaintiff. Of these forty-seven defendants, thirty-four have consented to jurisdiction in the Central District of California by moving for transfer of the action to that district. One other defendant, Michael Nunez, is a resident of California. The remaining twelve defendants are foreign corporations, several of which do not appear to have been served. As to these defendants, there is no indication from the record that jurisdiction over these defendants either exists in North Carolina or would be lacking in California.

Case 2:09-cv-02231-RGK-RZ   Document 656   Filed 01/07/11   Page 17 of 67   Page ID
Case 5:08-cv-00223-H    Document 263/774 Filed 03/31/2009    Page 5 of 10
#:23637

expeditious, and inexpensive; (9) the administrative difficulties of court congestion; (10) the interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) the avoidance of unnecessary problems with conflict of laws. Hardee's, 44 F. Supp. 2d at 770-71.

"The court takes guidance from these factor-based tests; however, . . . a motion to transfer is a fluid inquiry that turns on the unique facts and circumstances of each case." Blackburn, 2007 U.S. Dist. LEXIS 92131, *7(citing as examples Stewart, 487 U.S. at 29 and Jenkins, 464 F. Supp. 2d at 493-44).

A. Plaintiff's Initial Choice of Forum

Relying on a case from the Middle District of North Carolina, plaintiff argues that unless the balancing of these factors strongly favors defendants, plaintiff's forum choice "generally should not be disturbed." Brown v. Flowers, 297 F. Supp. 2d 846, 850 (M.D.N.C. 2003). Additionally, a court "should not transfer venue where doing so would only shift the inconvenience to another party." Id. Plaintiff argues that she did not simply choose the Eastern District of North Carolina as the forum, but was "all but compelled by financial and professional circumstances to do so." (Pl.'s Mem. Opp. Mot. Adopt [DE #221] at 24.)

Because I created THE OTHER WOMAN in the Eastern

5

> District of North Carolina, because all of my
> records relating to such creation are located
> in the Eastern District of North Carolina (as
> well as in Washington, DC at the US Copyright
> Office), and because I cannot afford to hire an
> attorney in California to represent me in this
> matter, it would be extremely inconvenient if
> not impossible for me to litigate this case in
> the Central District of California.

(Aff. of Sheri H. Gilbert ¶ 7, Ex. 4 to Mem. Opp. Mot. Adopt .)

Defendants note that the deference accorded a plaintiff's choice of

forum is far from absolute.  This court agrees.  While a court should

give "due weight" to a plaintiff's choice of forum, transfer may be

warranted where the other § 1404(a) factors favor transfer.  See

Blackburn, No. 5:06-CV-300-D at 3.

B.  Residence of the Parties

The court finds that while the Eastern District of North

Carolina may be the most convenient forum for plaintiff, it does not

appear convenient for any other party or many potential witnesses.

Plaintiff is the only party who resides in North Carolina.  At least

29 of the moving defendants reside, work, have offices and/or have

relevant employees in the Los Angeles area.[3]  Four moving defendants

(Warner Communications Inc., Time Warner, Inc., CW Media, Inc., and

Turner Broadcasting System, Inc.) consent to jurisdiction in the

---

[3]The 29 moving defendants who work, have offices, and/or have
relevant employees in the Los Angeles area include Film Independent,
Inc., who moved this court to join the motion to transfer.  Film
Independent, Inc. is a California Corporation.

6

Case 5:08-cv-00223-H   Document 263   Filed 03/31/2009   Page 7 of 10
Case 2:09-cv-02231-RGK-RZ   Document 656   Filed 01/07/11   Page 19 of 67   Page ID
#:17776

Central District.  Defendant Kumar Mobiliengesellschaft MBH & Co.

Projekt Nr. 1 KG, A German Company, has filed notice with this court

that it does not object to transfer to the Central District of

California.  Of the thirteen remaining defendants, one is Michael

Nunez, who is a California resident. Twelve are foreign corporations,

whose residence is considered neutral for purposes of transfer

analysis.

C.   Access to Proof

Additionally, most of the key evidence is located in California.

Plaintiff alleges that she submitted her screenplay to individuals

and to screenwriting contest sponsors in Los Angeles, California.

(First Am. Compl. ¶¶ 94-95, 115-16, 132.)  Also, nearly all of the

evidence surrounding the creation, production and distribution of

"Monster-in-Law" is located in the Los Angeles Area.  Plaintiff

asserts that she has had contact with people and organizations in

Utah, Georgia, Washington, D.C., New York and California and that

some of these people will likely have information relevant to the

case.  Even assuming this is correct, this court fails to understand

how witnesses located in Utah, Georgia, Washington, D.C. New York

and California will be inconvenienced by transfer of this case from

North Carolina to California.

D.   Subpoena Power

According to the First Amendment complaint, none of the

defendants reside in North Carolina, and the vast majority of them,
as well as their witnesses reside, work or have offices in California.
Defendants also point out that the Central District of California
can compel the attendance of significantly more non-party witnesses.
In this case where many non-party witnesses reside in California,
this court will not have the authority to compel  the attendance of
these witnesses.  See Fed. R. Civ. P. 45(c)(3)(A)(ii), (e)(1)
(restricting court's power to compel attendance of out-of-state
witnesses who reside and work more than 100 miles away).  Therefore,
this factor weighs in favor of transfer.  See Jim Crockett
Promotions, Inc. v. Action Media Group, Inc., 751 F.Supp. 93, 97
(W.D.N.C. 1990).

E.    Possibility of View

    Factor Five is the possibility of a view.  A view seems unlikely
in this matter, rendering this factor neutral.

F.    Enforceability of Judgment

    As to the enforceability of a judgment, plaintiff has not
contended that a judgment will be difficult to enforce, so this factor
carries little weight.  However, defendants do not own any property
in North Carolina, yet many defendants do own property in California,
the proposed forum.  Therefore, this factor favors transfer.

G.    Fair Trial & Expense Considerations

    Factors seven and eight regard opportunity for a fair trial and

8

considerations of expense which also turn, in this case, on the availability of witnesses and the ability to subpoena non-party witnesses.   As discussed earlier, the inability to subpoena witnesses favors transfer.  Given the location of the evidence and non-party witnesses, the court finds that the parties will have a greater opportunity for a fair trial in the Central District of California and that such a trial will be be more efficient and less costly than if the case were to remain in this jurisdiction.   See Jim Crockett Promotions, Inc., 751 F. Supp. at 97.

H.   Court Congestion and Other Administrative Considerations

Defendants   assert,   and   this   court,   having   reviewed   the statistics provided by defendants, agrees, that the factor of court congestion is neutral in these circumstances.

I.   Interest in Settling Localized Controversies at Home

The court further finds that California has a greater interest in settling this controversy.  Although plaintiff is a resident of North Carolina, most, if not all, of the alleged events (the submission of her work as well as the alleged infringement by creating, producing and filming "Monster-in-Law") occurred in California.

J.   Conflict of Laws Concerns

Only two of plaintiff's claims are state law claims, one which arises under North Carolina law and one under California law.  Both

state law claims are for unfair business practices.  The court finds that conflict of law issues do not weigh heavily in the decision to transfer this matter.

Having thoroughly considered all of the factors mentioned above, and having given plaintiff's choice of forum considerable deference, the court finds that, in the interest of justice, this case should be transferred to the Central District of California pursuant to 28 U.S.C. § 1404(a).

### CONCLUSION

As detailed above, the court grants the motions to join and/or adopt [DE #191, 202, 207 and 208]. Additionally, the court has considered all the facts and circumstances of the case, the convenience of the parties and potential witnesses and the interest of justice.  The court concludes that this dispute would be best resolved in the United States District Court for the Central District of California.   For the foregoing reasons, this matter is TRANSFERRED to the United States District Court for the Central District of California.

This 31st day of March 2009.

MALCOLM J. HOWARD
Senior United States District Judge

At Greenville, NC

10

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 09-02231 RGK (RZx) | Date | November 16, 2009 |
| Title | *SHERI H. GILBERT v. NEW LINE PRODUCTIONS, INC., et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | | Not Reported |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**    **(IN CHAMBERS)** Order Re Defendants' Motions to Dismiss (DE 369, DE 374, and DE 376)

## I.    FACTUAL BACKGROUND

Plaintiff Sheri G. Gilbert ("Plaintiff") alleges that thirty-four individuals and entities listed in the Complaint (collectively "Defendants") copied her screenplay, "When Mom Is the Other Woman," and turned it into the movie "Monster in Law." Plaintiff wrote four different versions of her screenplay and obtained copyright registration for versions two, three, and four. Plaintiff alleges that "Monster in Law" infringes each one of her works or a combination thereof in violation of the Copyright Act of 1976, 17 U.S.C. §101, et seq. Plaintiff also claims that Defendants engaged in a pattern of racketeering activity related to copying her work and sharing the profits in violation of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. § 1962, et seq.

Before the Court are various Motions to Dismiss Plaintiffs' copyright and RICO claims under rule 12(b)(6). F. Rule Civ. P. 12(b)(6). The Court consolidates Defendants' Motions for the purpose of this order. For the reasons set forth below, the Court **GRANTS** Defendants' Motions to Dismiss and dismisses Plaintiff's claims in their entirety.

## II.    JUDICIAL STANDARD

A party may move to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must assume allegations in the challenged complaint are true, and construe the complaint in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court may not dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Russell v. Landrieu*, 621 F.2d 1037 (9th Cir. 1980). However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Dismissal is appropriate only where the complaint lacks a cognizable legal

theory or sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Also, the court will not assume that the plaintiff can prove facts which have not been alleged in the complaint. *Associated Gen. Contractors of Cal,. Inc. v. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

The court's review of a 12(b)(6) must be limited to the contents of the complaint, but the court may also review additional materials which are properly submitted as part of the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). "A copy of a written instrument that is an exhibit to a pleading is a part of a pleading *for all purposes*." Fed. Rule Civ. Proc. 10(c) (emphasis added). Moreover, the court may consider matters subject to judicial notice under F. Rule Evid. § 201. *See Mir, M.D. v. Little Co. Of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988). And the court need not accept as true allegations that contradict documents that are attached as exhibits. *Sprewell*, 266 F.3d at 988.

## III.   DISCUSSION

To successfully establish a copyright infringement claim, Plaintiff must demonstrate 1) his ownership of the copyright, 2) the defendant's access to his work, and 3) substantial similarity between his work and the allegedly infringing material. *Berkic, v. Crichton*, 761 F.2d 1289, 1291-92 (9th Cir. 1985). Here, Defendants' Motions to Dismiss Plaintiff's copyright claims do not challenge the first and second elements. Therefore, the only issue before the Court on the Motion to Dismiss is whether as a matter of law Plaintiff may establish that Defendants' movie is substantially similar to her works. *See Funky Films Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1081 (9th Cir. 2006)("No amount of proof of access will suffice to show copying if there are no similarities.")(citation omitted).

The substantial similarity test comprises extrinsic and intrinsic components. *Id.* at 1077. The extrinsic analysis is objective and based on "specific criteria which can be listed and analyzed." *Id.* (citation omitted). For example, for the extrinsic similarity analysis, the court may compare the two works for similarities in "the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events." *Id.* (citation omitted). The plaintiff may also satisfy the extrinsic test by showing that "so many generic similarities" between the two works appear in a "particular sequence" in both works. *Metcalf v. Bochco*, 294 F.3d 1069, 1073-74 (9th Cir. 2002). But similarities between general ideas of the two works do not give rise to copyright infringement by themselves. *Funky Films*, 462 F.3d at 1078-79. Copyright law only protects "the specific details of an author's rendering of ideas." *Id.* at 1077. For the extrinsic similarity test, therefore, the Court need not take into account "scenes a faire," or concepts that "flow naturally from generic polit-lines." *Id.*

The intrinsic component is subjective and "is exclusively the province of the jury." *Id.* Nevertheless, because the plaintiff needs to satisfy both the extrinsic and intrinsic components of the substantial similarity test to establish infringement, a finding of lack of extrinsic similarity is fatal to the plaintiff's copyright case as a matter of law. *Id.*

Although the substantial similarity test is often decided on summary judgment or at trial, "when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss." *Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945); *see also Zella v. E.W. Scripps Co.*, 529 F.Supp.2d 1124, 1130 (C.D.Cal. 2007)("The Court may assess copyright infringement as a matter of law on the [] motion to dismiss.").

Here, the Court has before it all the copyrighted versions of Plaintiff's work as well as Defendants' movie. There are no disputes as to the authenticity of the works submitted to the Court on the Motion to Dismiss, and the Court has taken judicial notice of the parties' works. Upon evaluating all the works submitted to the Court on the Motion to dismiss, the Court finds that as a matter of law

Plaintiff will not be able to establish that the second, third, or fourth versions of her screenplay are substantially similar to Defendants' movie. The Court further holds that Plaintiff may not bring an action for copyright infringement based on those aspects of the first screenplay that are unique to the first version because she has not obtained copyright registration for the first version of her work. *See* 17 U.S.C. § 411(a). Similarly, Plaintiff may not rely on unpublished and preliminary drafts of Defendants' work in her infringement action. *See v. Durang*, 711 F.2d 141, 142 (9th Cir. 1983)("Copying deleted or so disguised [in later drafts] as to be unrecognizable is not copying."). Therefore, as described below in more detail, no additional set of facts, including Defendants' access to Plaintiff's work, would allow Plaintiff to prevail, and there is no reason to allow the case to advance to the summary judgment stage.

### A.   Plaintiff Cannot Establish Substantial Similarity Between the Second Version of Her Screenplay and Defendants' Movie

There are some generic similarities between the second version of Plaintiff's work and Defendants' movie. Both works concern an over-controlling mother in law that is determined to keep her son from marrying his new-found lover. In both works, the mother in law is a cunning character that schemes to break up the husband and wife to be. There are also a few minor similarities in those schemes. For example, both mothers in law investigate the future bride's past, hoping that they will discover something that would induce their son to end the relationship. Both mothers in law also attempt to bring another attractive woman to their son's attention to divert his focus away from the future bride. And there is some resemblance between certain minor details in each work. For example, in Plaintiff's work, the girlfriend character consults a psychic, who tells her that her lover is her "soul mate" and that a "dark woman" is present in her life. In Defendants' movie, a "crazy old lady" and a "knight in shining armor" appear during a tarot card reading game. In both works, the girlfriend character is told that her lover is homosexual. Once in each work, the mother in law kisses her son on the lips. And finally, in both works, the mothers in law use an illness as an excuse to draw their sons closer to themselves and away from the girlfriend character.[1]

---

[1] Plaintiff offers a long list of alleged similarities in her Second Amended Complaint ("SAC") comprised of 183 comparisons between Defendants' movie and each version of Plaintiff's work. Yet many of the alleged similarities point to general ideas and generic scenes. *See* (Ex. J to SAC, table entries 1, 2, 3, 4, 6, 8, 12, 13, 15, 16, 39, 60, 78, 79, 83, 91, 92, 97, 98, 102, 103, 105, 110, 112, 120, 121, 140, 141, 146, 152, 154, 159, 166, 170, 181.) Some of the comparisons rely on extrinsic material such as preliminary drafts of Defendants' screenplay and cast interviews with the media. *See* (Ex. J to SAC, table entries 5, 10, 11, 14, 18, 20, 21, 35, 39, 44, 56, 59, 67, 68, 70, 71, 73, 74, 80, 81, 88, 89, 90, 93, 100, 105, 116, 139, 143, 144, 145, 153, 155, 164, 166, 171, 173, 176, 182, 183.) *See also See v. Durang*, 711 F.2d 141, 142 (9th Cir. 1983)("Copying deleted or so disguised [in later drafts] as to be unrecognizable is not copying."). And finally, some of the comparisons do not reveal any similarity. *See* (Ex. J to SAC, table entries 23, 26, 29, 30, 31, 32, 33, 36, 41, 42, 48, 62, 63, 64, 66, 76, 84, 85, 86, 87, 104, 106, 109, 112, 132, 142, 163, 169, 174, 175, 177, 180.) The Court notes–after having reviewed the entire list–that the long list of alleged similarities does not turn this case to one where "so many generic similarities" exists between the parties' works that the extrinsic similarity test is satisfied regardless of differences in the plot, characters, mood, etc. *See Metcalf*, 294 F.3d at 1073-74. The generic similarities listed in the first paragraph of part III.A *supra* comprise the entire set of similarities that warrant discussion in this case. The remaining generic similarities, listed in this footnote, do not call for detail analysis. For example, alleged similarity No. 2 is that the works include a "female protagonist;" No. 3 is that the female protagonist has two parents (which are dead or alive in different versions of the parties' works); No. 4 is that she is the only child (which has no significance in any of the works); No. 7 is that the works contain a "female antagonist;" No. 10 is that the son lives with her mother at the beginning of Plaintiff's screenplay, but he lives on his own at the start of Defendants' movie; No. 12 is that the works include a male character; No. 13 is that the male character is in love with the female character; No. 15 is

These similarities pale, however, in comparison to vast differences in characters, plot, mood, and themes between the two works. *See Funky Films*, 462 F.3d at 1078 (affirming summary judgment of non-similarity despite similarities that appeared significant at first but paled in light of more significant differences in plot, characters, mood, etc.). With respect to characters, Plaintiff's work depicts a man who is under his mother's control and subject to her whim. Although he appears to be a successful attorney, he lives with his mother and sleeps in a bed shaped like a car that should not typically appeal to a grown man. He abides by his mother's demands at the cost of neglecting and mistreating his lover. He answers his mother's telephone call that disrupts an intimate moment with his girlfriend. He leaves his girlfriend after she has prepared an elaborate breakfast in order to eat with his mother instead. He asks his girlfriend to take his dirty clothes to his mother's house even though he is going from his girlfriend's home to his mother's house at the same time. He cannot decline his mother's invitation to have dinner at her mother's house on Valentine's Day during which his mother spoon-feeds him the dessert. In sum, the son's character is a weak and immature man who is psychologically inseparable from his mother.

On the other hand, the male character in Defendants' movie does not live with his mother. The movie depicts him as a successful and happy professional, a physician. Unlike his counterpart in Plaintiff's work, he does not appear submissive to his mother's every request. He ignores his mother's repeated attempts to contact him when he is busy meeting his future girlfriend for the first time. He teases his girlfriend by refusing to cease an intimate moment even when his girlfriend is talking on the phone with her mother in law. He also does not display any of the characteristics of his counterpart in Plaintiff's work that would otherwise make him seem immature and dependent on his mother.

The mother in law characters are also quite different in the two works. Plaintiff's depiction of the mother in law is an unhappy woman that lives in a poor neighborhood and does not have anyone in the world except her son. In Defendants' work, the mother in law is a successful professional that lives in her outrageously expensive estate. Although she has just been replaced by a younger woman as a talk-show host, she still carries much of the confidence and resourcefulness that one would expect from the host of a widely watched talk-show. She has photographs with prominent politicians, heads of states, and celebrities at her house and continues to keep in touch with influential figures.

The bride (or girlfriend) characters are also different. The character in Plaintiff's work is a journalist, who although very competent, has been unfairly denied a position as an anchorwoman. Her investigative work has unveiled a major corporate scandal. When the story breaks towards the end of the screenplay, she finally receives the well-deserved promotion. In Defendants' work, on the other hand, the girlfriend figure is a dog-walker with artistic aspirations. He character does not contain any of the professional characteristics of her counterpart in Plaintiff's work. Moreover, as described below, apart from their professions, the two women are also different in their personalities: Plaintiff's character patiently tolerates the abuse from her mother in law; Defendants' ferociously responds in kind.

The works are also vastly different in their plots and sequence of events. Plaintiff's story begins when the young couple have already met and agreed to get married. It continues as the male character formally proposes to the bride to be. And it ends after the couple break up because of the negative influence of the son's mother in their relationship. In Defendants' work, on the other hand, the couple meet accidentally for the first time at the beginning of the movie. Eventually the son proposes to his girlfriend in front of his mother. The mother in law does everything in her power to prevent the couple

that the male character is a lawyer in Plaintiff's work and a doctor in Defendants'; No. 16 is that each work includes a scene where the male character is at work; No. 17 is that each male character has a mother. The Court need not exhaust the list to deliver its point.

from getting married, but she eventually changes course when she realizes that her acts are harming her son. The movie ends after the couple are married.

Moreover, Plaintiff's story is told through a flashback: the script starts in a courtroom, where the girlfriend character appears as a witness. The story of her relationship and her problems with the mother in law are then told to the audience in court (and the viewers) through her testimony. Defendants' movie, on the other hand, advances chronologically. Plaintiff's story includes a number of subplots, including a corporate scandal and a second couple with a troubled relationship. Neither sub-plots have an equivalent in Defendants' movie. Another subplot in Plaintiff's work depicts the girlfriend character's work environment and her struggle to advance professionally in light of her boss's favoritism for his own daughter. Again, Defendants' work does not contain any similar subplot.

The mood and the themes are also different. Plaintiff's work is rather dark. Characters fight, cry, and use expletives often throughout the work. There is a scene in which the son gestures as if he is about to hit his lover. The mother in law's attempts to derail the marriage are dark-hearted and psychological. The reader can sense the son's emotional struggle in feeling divided between his mother and lover. And the girl never fights back in kind with her mother in law; she tolerates the abuse until she cannot any longer and then leaves the relationship. There is also a sub-plot involving the murder of a person who filed a lawsuit against a corporation that the boyfriend character, who is a lawyer, represents. He suspects that his client may be involved in the murder. All of these elements give Plaintiff's work a heavy theme and a dark mood.

Defendants' work, in contrast, is a comedy. The mother in law character designs outrageous plans to derail her son's relationship. She puts peanuts in the girlfriend's food even though she is allergic to nuts. She cooks a terrible meal that the girlfriend has to eat out of politeness. She invites her to a black-tie party without letting her know about the dress code and then offers her a dress that is too small. To add to the comedy, the girlfriend fights back with her own plans. She makes her own dress using fabric that she tears from the curtains at her mother in law's estate. She frightens the mother in law using one of her client's dogs (she is a dog-walker). She gives the mother in law sleeping pills and leaves her asleep at the table with her face in her dinner plate all night long. The two eventually settle their differences but not until they slap each other in the face multiple times in a comic fashion–taking turns, one at a time. These events and many more give the movie a light mood and a comic theme.

Plaintiff points to a long list of alleged similarities between various versions of each party's works. (SAC Ex. J.) As listed in footnote 1, the Court has looked up each one of the 183 alleged similarities in Plaintiff's screenplays and Defendants' movie. The alleged similarities, to the extent that they are in fact similarities, flow naturally from the story of a clash between an interfering mother in law and the future bride–a story that has been told for generations. The works do not share common characters, plots, sequence of events, themes, and moods. Moreover, the generic similarities of the works do not appear in a common sequence in anyway protectable by copyright laws.[2] *See Metcalf*, 294 F.3d at 1073-74; *Shaw v. Lindheim*, 919 F.2d 1353, 1363 (9th Cir. 1990). Therefore, the Court dismisses Plaintiff's copyright infringement claim with respect to the second version of her screenplay.

**B.     The Third and Fourth Versions of Plaintiff's Screenplay Are Not Substantially
         Similar to Defendants' Movie**

Compared to the second version of Plaintiff's work, the third and fourth versions are much less similar to Defendants' movie. They contain the same basic story of the second version. Yet a series of subplots and secondary characters take the later versions to an entirely new direction far away from

---

[2] *See* note 1 *supra.*

Defendants' movie. For example, the third version includes a more prominent corporate scandal subplot. It also includes a more prominent depiction of a second couple whose relationship is troubled. It includes a stabbing scene. It also includes a car-theft scene in which two "thugs" shoot one of the characters in close range.[3] The fourth version opens with a gruesome suicide scene: A man in a bathroom shoots himself in the head through the mouth; blood splatters everywhere, even on his wife's face. The police arrests a person and charges him with the murder, even though the death was actually a suicide. The main couple–a journalist and an attorney–then team together to help free the innocent. These subplots and secondary characters set the third and fourth versions of Plaintiff's work too far apart from Defendants' movie to warrant any more discussion of substantial similarity between the works. As a matter of law, Plaintiff will not be able to establish that Defendants have infringed her copyrights in third and fourth versions of her work.

### C.    The First Version of Plaintiff's Screenplay Does Not Allow Plaintiff's Case to Withstand the Motion to Dismiss

The Copyright Act states: "[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). Accordingly, Defendants argue that Plaintiff does not have an independent copyright infringement claim based on her first screenplay because she has not obtained copyright registration for the first version of her screenplay. Plaintiff counters that she may bring a claim for the infringement of the first version of her work–even though the work is not registered–because the copyright registrations for the second, third, and fourth versions of her screenplays "relate back" to the first.

Courts have at times found that registration of a derivative work relates back to the earlier versions when the earlier versions are included in the derivative. The cases that Plaintiff cites are only of this kind. For example, the author of a collection of works may bring an action for the infringement of one of the works in the collection, even though she has only registered the collection and not the individual works. *See, e.g., Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F.Supp. 1231, 1241 (N.D.Cal. 1995).

Here, the "relating back" theory does not help Plaintiff's case survive the Motion to Dismiss. To the extent that the later versions relate back to the first–meaning that they include the first version in whole or in part–the Court has already evaluated the material and found that no substantial similarity exists. To the extent that plaintiff's case depends on elements specific to the first screenplay, the later works cannot relate back, because they do not *include* the elements. Therefore, Plaintiff may not resort to the first draft of her screenplay to defeat Defendants' Motion to Dismiss.

---

[3]Plaintiff alleges that this particular scene also exists in Defendants' movie. That is not so. Among the bonus scenes included in Defendants' movie is a scene in which the bride to be imagines (while day-dreaming as a passenger in a car) that her mother in law and another person pull over next to her car in a luxury vehicle, step out of the car carrying shotguns, and shoot at her. She consequently snaps out of her dream. The scene, like the rest of the movie, is a comical exaggeration, which depicts a future bride's fear of her mother in law. The "equivalent" scene in Plaintiff's work depicts a murderous shooting of the victim of a car theft. She actually dies in the plot, and other characters, including her son, sadly mourn her death. The two scenes are nothing alike in their expression of events or the purpose they serve in each work. Plaintiff's Complaint is replete with numerous other comparisons of this kind. *See* note 1 *supra.* Plaintiff may not prevail in a copyright action by mixing and matching a string of events that take place in each work, regardless of their expressive function and solely based on the fact that the scenes share a common idea despite their many differences. *See Berkic,* 761 F.2d at 1293; *Metcalf,* 294 F.3d at 1074.

### D.    The Court Dismisses Plaintiff's RICO Claims

Plaintiff's RICO claims are based on copyright infringement. Since the Court finds that Plaintiff cannot prevail in her copyright claims, the Court also dismisses Plaintiff's RICO claims.

## IV.    CONCLUSION

Since Plaintiff may only rely on the content of her works to establish substantial similarity to Defendants' movie, and since the Court has already found that Plaintiff may not establish substantial similarity based on her works, no additional facts would allow Plaintiff to prevail in her case. Therefore, there is no reason to allow the case to continue to the summary judgment stage. Therefor, the Court **GRANTS** Defendants' Motions to Dismiss and dismisses Plaintiff's claims in their entirety.

IT IS SO ORDERED.

|  | : |
|---|---|
| Initials of Preparer | slw |

WHITE O'CONNOR FINK & BRENNER LLP
  Lee S. Brenner (STATE BAR NO. 180235)
  Allison S. Rohrer (STATE BAR NO. 224029)
10100 Santa Monica Boulevard, Twenty-Third Floor
Los Angeles, California 90067-4008
Telephone: (310) 712-6100
Facsimile: (310) 712-6199
lbrenner@whiteo.com
arohrer@whiteo.com

Attorneys for Thirty-Four Defendants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

### NOTE: CHANGES MADE BY THE COURT

| | |
|---|---|
| Sheri H. Gilbert, an individual,<br><br>      Plaintiff,<br><br>      v.<br><br>NEW LINE PRODUCTIONS, INC., a California Corporation; NEW LINE HOME ENTERTAINMENT, INC., a New York Corporation; NEW LINE INTERNATIONAL RELEASING, INC., a California Corporation; NEW LINE TELEVISION, INC., a California Corporation; NEW LINE CINEMA CORPORATION, a Delaware Corporation; TURNER BROADCASTING SYSTEM, INC., a Georgia Corporation; WARNER HOME VIDEO INC., a Delaware Corporation; WARNER BROS. HOME ENTERTAINMENT, INC., a Delaware Corporation, formerly d/b/a Warner Home Video, Inc.; WARNER BROS. ENTERTAINMENT INC., a Delaware Corporation; WARNER COMMUNICATIONS INC., a Delaware Corporation; TIME WARNER, INC., a Delaware Corporation; BENDER-SPINK, INC., a California Corporation; CHRIS BENDER, individually and as an agent of Bender-Spink, Inc.; J.C. SPINK, individually and as an agent of Bender-Spink, Inc.; SPRING CREEK PRODUCTIONS, INC., a California | CASE NO. 2:09-cv-02231 RGK (RZ)<br><br>(The Honorable R. Gary Klausner)<br><br>**JUDGMENT DISMISSING PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Fed. R. Civ. Proc. 58<br><br>Trial Date:      April 13, 2010 |

09-2231 Gilbert v. New Line Productions, Inc. [Proposed] Judgment
Dismissing Plaintiff's Second Amended Complaint.DOC

[PROPOSED] JUDGMENT

Corporation; PAULA WEINSTEIN,
individually and as an agent of Spring
Creek Productions, Inc.; AVERY PIX,
INC., a California Corporation;
AVERY PRODUCTIONS, INC., a
California Corporation; KUMAR
MOBILIENGESELLSCHAFT MBH &
CO. PROJEKT NR. 1 KG, a German
Company; MICHAEL FLYNN;
NUYORICAN PRODUCTIONS, INC.,
a California Corporation; JULIO
CARO; ROBERT LUKETIC;
FIRECRACKER PRODUCTIONS,
INC., a California Corporation; ANYA
KOCHOFF, a/k/a Anya Kochoff
Romano, f/k/a Anya Kochoff Landes,
individually and as an agent of
Firecracker Productions, Inc.;
WRITTEN IN STONE, INC., a
California Corporation; RICHARD
LAGRAVENESE, individually and as
an agent of Written in Stone, Inc.;
JANE FONDA; JENNIFER LOPEZ,
individually and as an agent of
Nuyorican Productions, Inc.;
MICHAEL VARTAN; WANDA
SYKES; MIGUEL A. NUNEZ, JR.;
VILLAGE ROADSHOW PICTURES
ENTERTAINMENT INC., a Delaware
Corporation; VILLAGE ROADSHOW,
LTD, an Australian Corporation;
SANTA FE PRODUCTIONS NV, a
Belgian Public Limited Liability
Company, d/b/a Paradiso
Entertainment; PARADISO
ENTERTAINMENT NEDERLANDS
BV, a Dutch Private Limited Company;
PARADISO HOME
ENTERTAINMENT, a Dutch
Company; ENTERTAINMENT FILM
DISTRIBUTORS LTD, a British
Corporation; METROPOLITAN
FILMEXPORT, a French Corporation;
CW MEDIA, INC., a Canadian
Corporation, f/k/a Alliance Atlantis
Communications Inc., d/b/a Motion
Picture Distribution LP; CW MEDIA
SALES INC./CW VENTES MEDIA
INC., a Canadian Corporation;
CANWEST GLOBAL
COMMUNICATIONS CORP., a
Canadian Corporation; ALLIANCE
FILMS, INC., a Canadian Corporation,
f/k/a Alliance Atlantis Communications
Inc., d/b/a Motion Picture Distribution

09-2231 Gilbert v. New Line Productions, Inc.  [Proposed] Judgment
Dismissing Plaintiff's Second Amended Complaint.DOC

[PROPOSED] JUDGMENT

Case 2:09-cv-02231-RGK-RZ   Document 656   Filed 01/07/11   Page 32 of 67   Page ID
#:17789
Case 2:09-cv-02231-RGK-RZ   Document 425   Filed 11/23/2009   Page 3 of 5

1 | LP; YLEISRADIO OY, a/k/a YLE, a
Finnish Company; FS FILM OY, a
2 | Finnish Company; DISTRIBUTION
COMPANY, S.A., an Argentinean
3 | Company; THE ENDEAVOR
AGENCY, LLC, a Delaware Limited
4 | Liability Company; ADRIANA
ALBERGHETTI, individually and as an
5 | agent of the Endeavor Agency, LLC;
THE INDEPENDENT FEATURE
6 | PROJECT, INC., a New York
Corporation; FILM INDEPENDENT,
7 | INC., a California Corporation, f/k/a
Independent Feature Project/West; and
8 | DOES 1 through 10, inclusive,

9 |          Defendants.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

09-2231 Gilbert v. New Line Productions, Inc.  [Proposed] Judgment
Dismissing Plaintiff's Second Amended Complaint.DOC

[PROPOSED] JUDGMENT

# [PROPOSED] JUDGMENT

On November 16, 2009, by written Order (Docket Entry 421), this Court consolidated and granted three (3) motions of the Thirty-Four Defendants to dismiss the Second Amended Complaint of Plaintiff Sheri H. Gilbert ("Plaintiff") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] The motions to dismiss were filed on behalf of certain of the Thirty-Four Defendants (Docket Entries 369, 374, 376), and all of the Thirty-Four Defendants joined in said motions (Docket Entries 379, 380, 381). Defendant Film Independent, Inc. ("Film Independent") joined in one of the motions (Docket Entry 404).

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED** that:

1. Pursuant to the Court's November 16, 2009 Order, which is incorporated herein by reference, Plaintiff's Second Amended Complaint against the Thirty-Four Defendants and Film Independent, and each cause of action therein, is dismissed in its entirety.

2. The Thirty-Four Defendants and Film Independent are the prevailing parties in this action and are entitled to their costs.

/ / /

---

[1] The Thirty-Four Defendants are: Adriana Alberghetti; Avery Pix, Inc.; Chris Bender; Bender-Spink, Inc.; CW Media Inc.; Julio Caro; Distribution Company Argentina, S.A.; Firecracker Productions, Inc.; Michael Flynn; Jane Fonda; Anya Kochoff; Kumar Mobiliengesellschaft mbH & Co. PROJEKT NR. 1 KG; Richard Lagravenese; Jennifer Lopez; Robert Luketic; New Line Cinema Corporation; New Line Home Entertainment, Inc.; New Line International Releasing, Inc.; New Line Productions, Inc.; New Line Television, Inc.; Nuyorican Productions, Inc.; J.C. Spink; Spring Creek Productions, Inc.; Wanda Sykes; The Endeavor Agency, LLC; Time Warner Inc.; Turner Broadcasting System, Inc.; Michael Vartan; Warner Bros. Entertainment Inc.; Warner Bros. Home Entertainment Inc.; Warner Communications Inc.; Warner Home Video Inc.; Paula Weinstein; and Written In Stone, Inc.

3.    Requests for attorneys' fees may be made by regularly noticed motion to the Court, pursuant to Rule 54 of the Federal Rules of Civil Procedure and any other applicable rules and statutes, including Section 505 of the United States Copyright Act.

4.    Requests for costs may be made by application to the Clerk of the Court, pursuant to Rule 54 of the Federal Rules of Civil Procedure, and any other applicable rules and statutes.

~~5.    The Thirty-Four Defendants are awarded their attorneys' fees in this action in the amount of $_____ and costs in this action in the amount of $_____.~~

~~6.    Film Independent is awarded its attorneys' fees in this action in the amount of $_____ and costs in this action in the amount of $_____.~~

DATED:  _11/23/09_____

_Gary Klausner_

The Honorable R. Gary Klausner
United States District Judge

09-2231 Gilbert v. New Line Productions, Inc. [Proposed] Judgment
Dismissing Plaintiff's Second Amended Complaint.DOC

2

[PROPOSED] ORDER

Case 2:09-cv-02231-RGK-RZ  Document 656  Filed 01/07/11  Page 35 of 67  Page ID
#:17792
Case 2:09-cv-02231-RGK-RZ  Document 448  Filed 02/17/10  Page 1 of 3

JS-5

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-02231 RGK (RZx) | Date | February 17, 2010 |
|---|---|---|---|
| Title | **SHERI H. GILBERT v. NEW LINE PRODUCTIONS, INC., et al.** | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE | |
|---|---|---|

| Sharon L. Williams | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS)** Order re: Plaintiff's Motion for Reconsideration (DE 428 and 430) and Thirty-Four Defendants' Motion for Attorneys Fees (DE 426)

Plaintiff alleges that thirty-four Defendants named in the Second Amended Complaint (collectively, "Defendants") copied her screenplay, "When Mom Is the Other Woman," and ultimately turned it into the movie "Monster in Law" ("MIL" or the "Movie"). Plaintiff wrote four different versions of her screenplay and obtained copyright registration for versions two, three, and four. Plaintiff alleges that Defendants infringe each one of her versions or a combination thereof in violation of the Copyright Act of 1976, 17 U.S.C. §101, et seq. Plaintiff also claims that Defendants engaged in a pattern of racketeering activity related to copying her work and sharing the profits in violation of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. § 1962, et seq.

On November 16, 2009, the Court granted Defendants' consolidated Motions to Dismiss. Therein, the Court found that Plaintiff could not establish copyright infringement against Defendants based on substantial similarity of the Movie and versions two, three, and four of her screenplay (the "Movie claims"). The Court also held that since Plaintiff did not obtain copyright registration for her first screenplay, she could not hold Defendants liable for its infringement. The Court then dismissed the case in its entirety.

Before the Court is Plaintiff's Motion for Reconsideration of the November 16 Order. Plaintiff argues that 1) the Court clearly erred when it found that the Movie does not infringe, and 2) she should be able to assert infringement based on the earlier versions of the Movie's screenplay (the "screenplay claims"), even though the Court has found that the Movie does not infringe.

The Court agrees with Plaintiff that her screenplay claims remain viable, even after the Movie has been found not to infringe. Since Defendants' Motion to Dismiss focused on substantial similarity between the Movie and Plaintiff's works, and since Plaintiff failed to bring attention to her independent screenplay claims in the Opposition to Motion to Dismiss, the Court did not address the screenplay claims. Nonetheless, the screenplay claims are part of the Second Amended Complaint and legally

viable. *See* (Sec. Am. Compl. ¶¶ 86, 117, 127-28, 151, 178-79, 181.); *Walt Disney Prod.'s v. Filmation Assoc.*, 628 F.Supp. 871, 876-77 (C.D. Cal. 1986)(finding that unpublished screenplays and other articles created in the production of a movie can give rise to copyright infringement)(citations omitted). Therefore, the Court **GRANTS in part** Plaintiff's Motion for Reconsideration and re-opens the case. The Court notes, however, that this ruling does not concern the merits of the screenplay claims. It merely allows Plaintiff to litigate the screenplay claims as separate and independent allegations of infringement against Defendants.[1]

As to the remaining arguments in Plaintiff's Motion for Reconsideration, they are improper attempts to re-argue matters that the Court has already decided. Therefore, the Court need not address those issue here. The Court does note three points for clarification, however.

First, Plaintiff seems to argue that similarities between the earlier versions of the Movie's screenplay can establish that the Movie itself infringes Plaintiff's works. This Court already rejected that argument, as the Ninth Circuit has squarely held that earlier drafts of defendant's work are irrelevant for the purpose of establishing similarity between the plaintiff's work and the later drafts of the defendant's work. *See v. Durang*, 711 F.2d 142 (9th Cir. 1983). *Durang* held that the plaintiff is not entitled to discover evidence of "early drafts of defendant's play on the theory they might reflect copying from plaintiff's play that was disguised or deleted in later drafts. Copying deleted or so disguised as to be unrecognizable is not copying." *Id.* Therefore, even though Plaintiff's screenplay claims remain viable, they cannot affect the Court's ruling with respect to the Movie itself.[2]

Second, Plaintiff asserts that the Court has "admitted" 140 similarities between the Movie and her works. That is not so. In footnote 1 and 2 of the November 16 Order, the Court listed many of the alleged similarities and rejected Plaintiff's comparisons of the works. (Nov. 16 Order, footnotes 1 and 2). The Court also noted that "the alleged similarities, to the extent that they are in fact similarities, flow naturally from the story of a clash between an interfering mother in law and the future bride–a story that has been told for generations." *Id.* at 5. The Court also noted that this case is not one where abundance of generic similarities raises suspicion of copyright infringement. (Nov. 16 Order, note 3.) Plaintiff's assertion that the Court admitted 140 similarities between the two works, therefore, is unfounded.

Finally, Plaintiff argues that the Court should not have applied the extrinsic substantial similarity test at the motion to dismiss stage. Plaintiff did not take this position in her Opposition to the Motion to Dismiss. Nonetheless, Plaintiff correctly states that determination of substantial similarity often requires expert testimony and detailed analysis of the facts. *See, e.g., Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2004)("The extrinsic test often requires analytical dissection of a work and expert testimony."). Plaintiff also correctly states that where access to the plaintiff's work is undisputed, a lesser degree of similarity is required to satisfy the substantial similarity test. *See id.* But it does not follow that the Court should always allow discovery in copyright infringement cases–no matter how dissimilar (and unsubstantially similar) the parties' works–simply because the case is at the motion to dismiss stage or because access is not at issue. "[W]hen the copyrighted work and the alleged

---

[1] The November 16, 2009 Order also dismissed Plaintiff's RICO claims against Defendants, since the RICO claims arose out of the alleged copyright infringement of Plaintiff's work. Pursuant to this Order, however, the Court also notes that Plaintiff may assert her RICO claims against Defendants, to the extent that she believes to have any legally and factually viable RICO claim against Defendants in connection to her screenplay claims.

[2] Of course, the earlier drafts may be relevant to establish access to the plaintiff's work, *see, e.g., Miller v. Universal City Studios, Inc.*, 650 F.2d 1365 (5th Cir. 1981), but access was not at issue on the motion to dismiss.

Case 2:09-cv-02231-RGK-RZ   Document 656   Filed 01/07/11   Page 37 of 67   Page ID
#:17794
Case 2:09-cv-02231-RGK-RZ   Document 448   Filed 02/17/10   Page 3 of 3

infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss." *Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945). And no amount of access can make two dissimilar works substantially similar. In close cases, this Court would be inclined to allow the matter to proceed to summary judgment or trial to ensure that the parties' arguments are not shortchanged. The issue of substantial similarity between Plaintiff's works and the Movie, however, is not a close one. After carefully examining the Movie and Plaintiff's works, the Court has found that Plaintiff will not be able to establish substantial similarity in his Movie claims, even if she could establish that Defendants had access to his work.

For the reasons stated above, Plaintiff's Motion for Reconsideration is **GRANTED in part** with respect to Plaintiff's screenplay claims and **DENIED in part** with respect to the Movie claims. Accordingly, the Court **DENIES as not ripe and without prejudice** thirty-four Defendants' Motion for Attorneys Fees.

**IT IS SO ORDERED.**

|  | : |  |
| --- | --- | --- |
| Initials of Preparer | slw |  |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-02231 RGK (RZx) | Date | June 3, 2010 |
|---|---|---|---|

| Title | **_SHERI H. GILBERT v. NEW LINE PRODUCTIONS, INC., et al._** |
|---|---|

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE |
|---|---|

| Sharon L. Williams | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS)** Order re: The Movie Defendants' Motion for Judgment on the Pleadings (DE 458); Plaintiff's Ex Parte Application to Amend Second Amended Complaint (DE 490)

Plaintiff alleges that thirty-four Defendants named in the Second Amended Complaint (collectively, "Defendants") copied her screenplay, "When Mom Is the Other Woman," and ultimately turned it into the movie "Monster in Law" ("MIL" or the "Movie"). Plaintiff wrote four different versions of her screenplay and obtained copyright registration for versions two, three, and four. Plaintiff alleges that the Movie and the intervening screenplays that were ultimately turned into the Movie all infringe each one of her works or a combination thereof in violation of the Copyright Act of 1976. 17 U.S.C. §101, et seq. Plaintiff also claims that Defendants engaged in a pattern of racketeering activity related to copying her work and sharing the profits in violation of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. § 1962, et seq.

On November 16, 2009, the Court granted Defendants' consolidated Motions to Dismiss. Therein, the Court found that Plaintiff could not establish copyright infringement against Defendants based on substantial similarity of the Movie and versions two, three, and four of her screenplay (the "Movie claims"). The Court also held that since Plaintiff did not obtain copyright registration for her first screenplay, she could not hold Defendants liable for its infringement. The Court then dismissed the case in its entirety.

Plaintiff moved for reconsideration, arguing in part that the Court had focused on the Movie and failed to address whether the original or intermediary drafts of the Movie screenplay infringe Plaintiff's works. The Court agreed and granted Plaintiff's motion. The Court reaffirmed its finding that the Movie does not infringe Plaintiff's works. It held, nonetheless, that since the prior versions of the Movie screenplay were not discussed in Defendants' Motion to Dismiss, the "screenplay claims" were still viable. Therefore, the Court reopened the case on February 17, 2010.

More than two months later, on April 20, 2010, a group of 15 Defendants (self-entitled "the Movie Defendants") moved to dismiss. In that Motion, which is now before the Court, the Movie

Case 2:09-cv-02331-RGK-RZ Document 656 Filed 01/07/11 Page 39 of 67 Page ID
Case 2:09-cv-02331-RGK-RZ Document 497 Filed 06/03/10 Page 2 of 2 Page ID
#:17796

Defendants argue that they had nothing to do with the screenplay drafts and that the allegations against them in the Second Amended Complaint arise out of their conduct in relation to the Movie. Since this Court has already held that the Movie does not infringe, therefore, the Movie Defendants seek to be dismissed.

Plaintiff, in return, argues that the SAC implicates the Movie Defendants with respect to the screenplay claims in addition to the Movie claims in paragraphs 22, 69, 86, 117, 151, 178, 179, 187, and 195. Plaintiff has also attached a published article containing statements by one of the writers of the original version of the Movie screenplay. Therein, she states that some of the Movie Defendants helped re-write or modify some of the screenplay lines on the Movie set as the Movie was being filmed. Plaintiff has also attached a document that shows the Movie Defendant distributed the Movie along with the final copy of the Movie screenplay (which was turned into the Movie).[1] The SAC and the other two documents, according to Plaintiff, suffice to make a plausible copyright claim against the Movie Defendants.

Plaintiff's argument is unavailing. The cited paragraphs contain no specific facts that demonstrate any of the Movie Defendants had anything to do with writing the original or intermediary versions of the Movie screenplay. That they helped re-write some of the lines on the Movie set or distributed the final version of the Movie screenplay, even if competently demonstrated through properly authenticated and admitted evidence, does not make a difference. After all, the Court has held that the Movie does not infringe. It only follows that the final version of the screenplay, according to which the Movie was made, also does not infringe. Therefore, helping produce or distributing the final version of the screenplay does not itself show any infringing conduct. In this light, the Movie Defendants are not implicated in anyway in the screenplay claims and must be dismissed from this action.

To find another way to avoid dismissal, Plaintiff has also filed an Ex Parte Application to Amend the Complaint (for a third time). The Application is untimely and futile and will be denied. Plaintiff has already amended the Complaint twice. Plaintiff does not state why the facts that she seeks to add to the Complaint could not have been asserted in the first place, or at least two months ago when the Court reopened the case. And in any event, the proposed Third Amended Complaint does not cure the deficiencies in Plaintiff's claims against the Movie Defendants. Plaintiff only asserts therein in conclusory manner that some of the Movie Defendants helped write subsequent drafts of the Movie screenplay. The general and abstract language of the proposed Third Amended Complaint does not warrant amending the Complaint for a third time. Amendment will only serve to delay the case and should be denied.

Therefore, the Court **DENIES** Plaintiff's Ex Parte Application to Amend the Second Amended Complaint. The Court **GRANTS** the Movie Defendants' Motion to Dismiss.

**IT IS SO ORDERED.**

Initials of Preparer     slw

_____ : _____

---

[1] The Movie DVD contains a feature where the viewer may watch the movie and read the screenplay side-by-side.

1   Jean M. Lawler (SBN 91254 81067OR)
        jlawler@murchisonlaw.com
2   Nanette G. Reed (SBN 243552)
        nreed@murchisonlaw.com
3   Maria A Starn (SBN 235724)
        mstarn@murchisonlaw.com
4   **MURCHISON & CUMMING, LLP**
    801 South Grand Avenue, Ninth Floor
5   Los Angeles, California  90017-4613
    Telephone: (213) 623-7400
6   Facsimile: (213) 623-6336

7   Randall T. Garteiser, Esq. (SBN 231821)
    Singer & Garteiser LLP
8   1766 Union Street
    San Francisco, California  94123
9   Telephone: (415) 568-0553
    Facsimile: (415) 655-9785
10  Email: randall@sftrialattorneys.com

11  Attorneys for Plaintiff, Sheri H. Gilbert

12

13                UNITED STATES DISTRICT COURT

14      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

15

16  SHERI H. GILBERT, an individual,        CASE NO. 2:09-CV-02231 RGK (Rz)

17              Plaintiff,                   **[PROPOSED] EX PARTE ORDER
                                             GRANTING PLAINTIFF'S
18          vs.                              MOTION FOR
                                             RECONSIDERATION AND
19  NEW LINE PRODUCTIONS, INC., a            REOPENING DISCOVERY AND
    California Corporation; NEW LINE         CONTINUING TRIAL AND ALL
20  HOME ENTERTAINMENT, INC., a             RELATED DATES 90 DAYS OR, IN
    New York Corporation; NEW LINE          THE ALTERNATIVE, ORDER
21  INTERNATIONAL RELEASING,                REOPENING DISCOVERY FOR
    INC., a California Corporation; NEW      LIMITED PURPOSES AND
22  LINE TELEVISION, INC., a California      CONTINUING THE SETTLEMENT
    Corporation; NEW LINE CINEMA            CONFERENCE DEADLINE**
23  CORPORATION, a Delaware
    Corporation; TURNER                      Trial Date:        September 7, 2010
24  BROADCASTING SYSTEM, INC., a
    Georgia Corporation; WARNER
25  HOME VIDEO INC., a Delaware
    Corporation; WARNER BROS. HOME
26  ENTERTAINMENT, INC., a Delaware
    Corporation, formerly d/b/a/ Warner
27  Home Video, Inc.; WARNER BROS.
    ENTERTAINMENT INC., a Delaware
28  Corporation; WARNER

**DENIED**

BY ORDER OF THE COURT

---

                                    1
                     [PROPOSED] EX PARTE ORDER

1  COMMUNICATIONS INC., a
   Delaware Corporation; TIME
2  WARNER, INC., a Delaware
   Corporation; BENDER-SPINK, INC., a
3  California Corporation; CHRIS
   BENDER, individually and as an agent
4  of Bender-Spink, Inc.; J.C. SPINK,
   individually and as an agent of Bender-
5  Spink, Inc.; SPRING CREED
   PRODUCTIONS, INC., a California
6  Corporation; PAULA WEINSTEIN,
   individually and as an agent of Spring
7  Creek Productions, Inc.; AVERY PIX,
   INC., a California Corporation;
8  AVERY PRODUCTIONS, INC., a
   California Corporation; KUMAR
9  MOBILENGESELLSCHAFT MBH &
   CO. PROJEKT NR. 1 KG, a German
10 company; MICHAEL FLYNN;
   NUYORICAN PRODUCTIONS, INC.,
11 a California Corporation; JULIO
   CARO; ROBERT LUKETIC;
12 FIRECRACKER PRODUCTIONS,
   INC., a California Corporation; ANYA
13 KOCHOFF, a/k/a/ Anya Kochoff
   Romano, f/k/a/ Anya Kochoff Landes,
14 individually and as an agent of
   Firecracker Productions, Inc.;
15 WRITTEN IN STONE, INC., a
   California Corporation; RICHARD
16 LAGRAVENESE, individually and as
   an agent of Written in Stone, Inc.;
17 JANE FONDA; JENNIFER LOPEZ,
   individually and as an agent of
18 Nuyorican Productions, Inc.;
   MICHAEL VARTAN; WANDA
19 SYKES; MIGUEL A. NUNEZ, JR.;
   VILLAGE ROADSHOW PICTURES
20 ENTERTAINMENT INC., a Delaware
   Corporation; VILLAGE ROADSHOW,
21 LTD, an Australian Corporation;
   SANTA FE PRODUCTIONS NV, a
22 Belgian Public Limited Liability
   Company, d/b/a/ Paradiso
23 Entertainment; PARADISO
   ENTERTAINMENT NEDERLANDS
24 BV, a Dutch Private Limited Company;
   PARADISO HOME
25 ENTERTAINMENT, a Dutch
   Company; ENTERTAINMENT FILM
26 DISTRIBUTORS LTD, A British
   Corporation; METROPOLITAN
27 FILMEXPORT, a Frnech Corporation;
   CW MEDIA, INC., a Canadian
28 Corporation, f/k/a/ Alliance Atlantis

2

[PROPOSED] EX PARTE ORDER

Case 2:09-cv-02231-RGK-RZ Document 656 Filed 01/07/11 Page 42 of 67 Page ID
#:17799
Case 2:09-cv-02231-RGK-RZ Document 558 Filed 07/02/10 Page 3 of 4

1  Communications Inc., d/b/a Motion
   Picture Distribution LP; CW MEDIA
2  SALES INC./CW VENTES MEDIA
   INC., A Canadian Corporation;
3  CANWEST GLOBAL
   COMMUNICATIONS CORP., a
4  Canadian Corporation; ALLIANCE
   FILMS, INC., a Canadian Corporation,
5  f/k/a/ Alliance Atlantis
   Communications Inc., d/b/a/ Motion
6  Picture Distribution LP; YLEISRADIO
   OY, a/k/a/ YLE, a Finnish Company;
7  FS FILM OY, a Finnish Company;
   DISTRIBUTION COMPANY, S.A., an
8  Argentinean Company; THE
   ENDEAVOR AGENCY, LLC, a
9  Delaware Limited Liability Company;
   ADRIANA ALBERGHETTI,
10 individually and as an agent of the
   Endeavor Agency, LLC; THE
11 INDEPENDENT FEATURE
   PROJECT, INC., a New York
12 Corporation; FILM INDEPENDENT,
   INC., a California Corporation, f/k/a/
13 Independent Feature Project/West; and
   DOES 1 through 10, inclusive,
14
                Defendants.
15

16

17 **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

18       PLEASE TAKE NOTICE that the Court has considered the Ex Parte Application of

19 plaintiff, SHERI H. GILBERT, for Reconsideration of the Court's Order of May 28, 2010.

20 ~~Good cause appearing, discovery is hereby reopened and the scheduling order is~~

21 ~~modified as follows:~~

22 ~~Discovery Cut-Off Date:~~              ~~September 21, 2010~~

23 ~~Motion Cut-Off Date:~~                 ~~September 28, 2010~~

24 ~~Settlement Conference Deadline:~~      ~~October 8, 2010~~

25 ~~Pretrial Conference:~~                 ~~November 22, 2010 at 9:00 a.m.~~

26 ~~Jury Trial~~                           ~~December 6, 2010 at 9:00 a.m.~~

27 #

28 #

                              3

1    ~~IT IS FURTHER ORDERED:~~

2    _____

3    _____

4    _____

5    _____

6    **~~IN THE ALTERNATIVE,~~**

7    ~~Good cause appearing, discovery is hereby reopened and the scheduling order is~~

8    ~~modified for the limited purpose of permitting plaintiff to complete discovery initiated~~

9    ~~prior to the June 21, 2010 discovery cut-off date, including, motions to compel concerning~~

10   ~~plaintiff's first set of document demands to defendants and motions to compel the~~

11   ~~depositions of witnesses who did not appear for their previously noticed depositions on~~

12   ~~June 18, 2010 and June 21, 2010. The mandatory meet and confer requirements are~~

13   ~~reduced from 10 to 5 days.~~

14   ~~Motion Cut Off Date:                    August 16, 2010~~

15   ~~Discovery Cut Off Date:                 August 23, 2010~~

16

17   ~~IT IS FURTHER ORDERED that the settlement conference deadline is continued~~

18   ~~to August 9, 2010.~~

19   EX PARTE APPLICATION IS DENIED.

20

21   DATED: July 2. 2010

22

23   _____
     The Hon. R. Gary Klausner
24   U.S. District Court Judge

25

26

27

28

4
[PROPOSED] EX PARTE ORDER

Case 2:09-cv-02231-RGK-RZ Document 624 Filed 08/13/10 Page 1 of 11 Page ID
#:18880
Case 2:09-cv-02231-RGK-RZ Document 638 Filed 01/07/11 Page 44 of 67 Page ID
#:17801

JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 09-02231 RGK (RZx) | Date | August 13, 2010 |

| | |
|---|---|
| Title | *SHERI H. GILBERT v. NEW LINE PRODUCTIONS, INC., et al.* |

| | |
|---|---|
| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE |

| | |
|---|---|
| Sharon L. Williams | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

| | |
|---|---|
| **Proceedings:** | **(IN CHAMBERS)** Order re: Defendants' Motions for Summary Judgment (DE 510, 519, & 535) and other related matters |

## I.    INTRODUCTION

Plaintiff Sheri G. Gilbert ("Plaintiff") alleges that Nineteen Defendants named in the Second Amended Complaint (collectively, "Defendants") willfully copied her screenplay, "When Mom Is the Other Woman" in writing several unauthorized screenplays entitled "Monster in Law." Plaintiff alleges that Defendants' screenplays infringe on each one of her works or a combination thereof in violation of the Copyright Act of 1976, 17 U.S.C.  101, et seq. Plaintiff also claims that Defendants engaged in a pattern of racketeering activity related to copying her work and sharing the profits in violation of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C.  1962, et seq.

Before the Court are various Motions for Summary Judgement on Plaintiff's copyright and RICO claims under Fed. R. Civ. P. 56. The Court consolidates Defendants' Motions for the purposes of this Order. For the reasons set forth below, the Court **GRANTS** Defendants' Motion for Summary Judgement based on a lack of substantial similarity between the parties' works and dismisses Plaintiff's claims in their entirety.

## II.    FACTUAL BACKGROUND

From 1998 to 2001, Plaintiff, a North Carolinian screenwriter, wrote four versions of a motion picture screenplay entitled "When Mom's the Other Woman" ("The Other Woman"). Plaintiff registered the Second version of her screenplay with the U.S. Copyright Office in May 2000, the Third and Fourth versions on May 12, 2008, and the First version on May 26, 2010.

Shortly after January 2006, Plaintiff saw the feature film "Monster-in-Law" ("the Movie") and found it to bear several similarities to her screenplays. On May 13, 2008, Plaintiff filed suit for copyright infringement against thirty-four defendants in the Eastern District of North Carolina, alleging

Case 2:09-cv-02231-RGK-RZ Document 656 Filed 01/07/11 Page 45 of 67 Page ID
#:16881
Case 2:09-cv-02231-RGK-RZ Document 626 Filed 08/13/10 Page 2 of 11 Page ID
#:32802

Defendants' Movie and Defendants' screenplays, upon which the Movie is based, infringed upon the
Second version of Plaintiff's screenplay. Three months later, Plaintiff filed the First Amended
Complaint. (Dkt 173.)

On March 31, 2009, Plaintiff's case was transferred to this district. Subsequently, Plaintiff filed
several requests to file a Second Amended Complaint, and on August 4, 2009, the Court approved
Plaintiff's request and permitted her to include claims for infringement on the Third and Fourth versions
of her screenplay. Then on November 16, 2009, the Court granted Defendant's consolidated Motion to
Dismiss for Failure to State a Claim, finding that Plaintiff could not establish substantial similarity
between the Movie and the Second, Third, or Fourth versions of her screenplay. The Court then
dismissed the case in its entirety.

Plaintiff filed a motion for reconsideration of the Court's Nov. 16 Order, arguing that a viable
copyright claim remained as they alleged that Defendants' screenplays, not the Movie alone, also
infringed upon Plaintiff's works. On February 17, 2010, the Court agreed with Plaintiff and re-opened
the case allowing Plaintiff to litigate the screenplay claims as separate and independent allegations. (Dkt
421.) Since the Court had already decided that the Movie did not infringe upon Plaintiff's work, fifteen
of the original thirty-four defendants were dismissed, since their alleged infringing conduct was related
only to the Movie. (Dkt 497.)

Subsequently, only Nineteen Defendants remained, all of whom filed motions for summary
judgement. On June 21, 2010, twelve defendants filed a motion for summary judgement on Plaintiff's
claims due to a lack of substantial similarity between the works. Shortly thereafter, six defendants filed a
motion for summary judgement for lack of access, and the remaining defendant filed a similar motion
based on Plaintiff's RICO claims.

## III.    JUDICIAL STANDARD

Summary judgment is proper where "the pleadings, deposition, answers to interrogatories, and
admission on file, together with the affidavits, if any, show that there is no genuine issues as to any
material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.
56(c). An issue is "genuine" if there is sufficient evidence for a reasonable jury to find for the
nonmoving party, and a fact is "material" when it may affect the outcome of the case under the
substantive law that provides the claim or defense. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-
49 (1986).

The moving party has the initial burden to demonstrate the absence of a genuine issue of material
fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party is without the ultimate
burden of persuasion at trial, it may either produce evidence negating an essential element of the
opposing party's claim, or demonstrate that the nonmoving party does not have enough evidence to
carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Insurance Co. v. Fritz Companies,
Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party meets this initial requirement, the burden
then shifts to the opposing party to go beyond the pleadings and set forth specific facts that establish a
genuine issue of material fact remains for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475
U.S. 574, 585-87 (1986).

In granting summary judgment, a district court is not entitled to weigh the evidence and resolve
disputed underlying factual issues. *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992).
Rather, courts are required to view all inferences to be drawn from "the underlying facts . . . in the light
most favorable to the party opposing the motion." *Id.* (quoting *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655
(1962)).

## IV. **DISCUSSION**

Defendants contend they are entitled to summary judgement as to all of Plaintiff's claims as there is no genuine issues of material fact and Plaintiff is unable to demonstrate a valid copyright claim. The Court agrees with Defendants' assertions.

To successfully establish a copyright infringement claim, Plaintiff must demonstrate    (1) ownership of the copyright, (2) the defendant's access to the copyrighted work, and          (3) substantial similarity between the copyrighted work and the allegedly infringing material. *Berkic, v. Crichton*, 761 F.3d 1289, 1291-92 (9th Cir. 1985). Here, the matter before the Court is whether there are substantial similarities between the protected elements of Plaintiff's screenplays and comparable elements in Defendants' screenplays.[1]

"When the issue is whether two works are substantially similar, summary judgement is appropriate if no reasonable juror could find substantial similarity of ideas and expressions." *Funky Films v. Time Warner*, 607 F.3d 620, 624 (9th Cir. 2010) (citation omitted). Substantial similarity requires a fact specific inquiry, but it "'may often be decided as a matter of law.'" *Benay v. Warner Bros. Entm't*, 607 F.3d 620, 624 (9th Cir. 2010) (quoting *Sid & Marty Krofft Television Prods., Inc., v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir. 1977)). The Ninth Circuit has frequently affirmed summary judgement decisions in favor of copyright defendants on the issue of substantial similarity. *Id.* (citing *Shaw v. Lindheim*, 919 F.2d 1353, 1355 (9th Cir. 1990)).

To prevail on a copyright infringement claim, a plaintiff must prove substantial similarity under both the extrinsic and intrinsic tests. *Funky Films*, 462 F.3d at 1077. The extrinsic analysis is objective and based on "specific criteria which can be listed and analyzed." *Id.* The intrinsic analysis is subjective and focuses on whether a reasonable person would find the work substantially similar. *Id.* In a motion for summary judgement, courts only apply the extrinsic test, leaving the intrinsic test to trier of fact. *Id.* If the court finds that the plaintiff failed to satisfy the extrinsic test, such a finding will be fatal to the plaintiff's copyright case. *Id.*

The extrinsic test compares the "'articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events.'" *Id.* (citing *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1044 (9th Cir. 1994)) (citations omitted). A court must only inquire whether the "protect[able] elements, standing alone, are substantially similar." *Cavalier v. Random House*, Inc., 297 F.3d 815, 822 (9th Cir. 2002). "Copyright law only protects expression of ideas, not the ideas themselves." *Benay*, 607 F.3d at 614 (quoting *Cavalier*, 297 F.3d at 625). General themes and familiar stock scenes that are "staples of literature are not protected." *Id.* "Scenes of faire, or situations and incidents that flow necessarily or naturally from a basic plot premise, cannot sustain a finding of infringement." *Id; Walker v. Time Life Films*, 784 F.2d 44, 50 (2nd Cir. 1986) (holding that drunks, derelict cars, morale problems, the familiar figure of Irish cop, and other elements are all reoccurring themes in police fiction, and thus are not protectable).

Here, at the outset, the Court notes that Plaintiff attempts to manufacture substantial similarities between the parties' works by mixing and matching various elements that exist in different screenplays without attention to their origin or context. This tactic is wholly flawed. Plaintiff cannot simply selectively filter elements from Defendants' draft screenplays and summarily compare them to various elements of her screenplays. The works must be assessed individually and not manipulated for any

---

[1] The parties' do not dispute that each party validly owns valid copyrights to their respective screenplays or the authenticity of the screenplays themselves. The Court assumed the element of access for purposes of summary judgement. *Funky Films*, 462 F.3d at 1075.

parties' own benefit.

There are eighteen screenplays by Defendants and four by Plaintiff. Plaintiff alleges that one, multiple, or maybe all of Defendants' works infringe one or all of her screenplays. The record before the Court for summary judgment contained all four versions of Plaintiff's screenplay, as well as fourteen of the eighteen Movie screenplay drafts. Rather than providing an analysis of all eighteen of Defendants' drafts, both parties presented analyses of three to five selected drafts completed between 2003 and 2004 for comparison to Plaintiff's work. For the purposes of summary judgement, the Court considered Plaintiff's four versions, as well as five of Defendants' drafts dated Jan. 5, 2003; Nov. 4, 2003; Feb. 3, 2004; Mar. 28, 2004; and July 24, 2004.[2]

After reviewing the parties' works, the Court finds that no genuine issue of material fact exists regarding the substantial similarity of the works. Defendants have successfully established that the works are not substantially similar. Plaintiff has at best pointed to general similarities between the screenplays, which are not protected under federal copyright law. Any similarities between the works are far outweighed by the significant differences in the plot, sequence of events, characters, mood, theme, settings, and dialogue.

The Court will start its analysis below by comparing Plaintiff's Second screenplay to Defendants' Jan. 2003 draft. After concluding that the two works are not substantially similar, the Court will explain how the remaining works cannot create a genuine issue of material fact for trial.

## A.   Plaintiff's Second Screenplay is Not Substantially Similar to Defendants' January 2003 Screenplay

The Court first compares Plaintiff's Second version of her screenplay to Defendants' Jan. 2003 screenplay, Defendants' earliest submitted screenplay draft. The two works are not without similarities. The two mother in law characters ("Barbara" in Plaintiff's work and "Viola" in Defendants') are controlling personalities that come between their sons ("Kyle" in Plaintiff's work and "Kevin" in Defendants') and respective girlfriends ("Julia" in Plaintiff's work and "Charlie" in Defendants'). Despite this generic similarity in the plots (and some other similarities discussed below), a comparison of the screenplays' plot, sequence of events, characters, mood, theme, settings, and dialogue, reveal an extraordinary number of differences. The Court highlights just some of the most glaring and important differences in the discussion below.

### 1.   Plot

The plots of the parties' works develop into very different stories. Plaintiff's screenplay is about how Julia, unable to stand-up to Barbara's efforts to breakup her relationship with Kyle, copes with the stress and frustration of Barbara's disapproval. From the outset, Julia refuses to confront Kyle or retaliate against Barbara. Instead the plot follows Julia as she sheepishly accepts Barbara's abuse and seeks solace through others, obtaining advice from friends, family, and group therapy. Along the way, Julia learns about the relationships of many other characters' with their respective mothers or mothers in law.

In contrast, Defendants' Jan. 2003 screenplay is about how Charlie, angered by Viola's attempts to drive the couple apart, fiercely retaliates against Viola's schemes in order to save her pending

---

[2] Defendants' January 2003 draft is the earliest full screenplay submitted to the Court. Filming of the Movie began on May 2, 2004.

marriage. Unlike Julia in Plaintiff's screenplay, Charlie refuses to just accept Viola's abuse. As a result, Charlie and Viola quickly engage in a head-to-head battle of who can outwit, out-frustrate, and outlast the other leading up the wedding day. The plot focuses on the series of comedic schemes and tricks that the two women play on each other, in order to drive the other away.

Additionally, Plaintiff's plot is more complex than Defendants' plot, as it features more characters and contains several subplots not present in Defendants' screenplay. One major subplot involves Julia feeling that she has been wrongfully denied a promotion to television anchorwoman at her workplace and her determination to become one. (*Id.* at 8-10, 42-44, 125-128, 137-138.) Another subplot revolves around a cover-up of a corporate scandal. (*Id.* at 8-10, 77-78, 127-129, 137-139.) Finally, in Plaintiff's screenplay, the characters spend several scenes seeking advice from a psychic hotline to help resolve their problems with their mothers in law. (*Id.* at 18-19, 49-50, 59, 101-102.) Defendants' screenplay does not have these comparable subplots, focusing almost exclusively on the relationship between Julia, Kevin, and Viola. Hence, the parties' plots are not similar as they develop very differently.

### 2. *Sequence of Events*

The parties' works differ significantly in their sequence of events. Plaintiff's screenplay unfolds as a flashback, where as Defendants' screenplay evolves chronologically. Plaintiff's screenplay opens with a courtroom scene where Julia, appears crying while she testifies to a court about her marriage to Kyle. The story then flashes-back to a scene where Julia and Kyle have already met and have been dating for some time. Later, the couple get engaged after spending a disastrous Valentine's day with Barbara. In contrast, Defendants' screenplay opens with Charlie as a single woman, going on several failed dates with different suitors. (Dkt 516, Ex. 4, 415-417.) Charlie accidently meets Kevin, and after a few months of courtship the couple becomes engaged. (*Id.* at 425-438.) Unlike Julia, Charlie had never met Viola formally as Kevin's girlfriend prior to the couple's engagement.

The tactics that the mothers in law use to antagonize the girlfriends also vary in many ways. In Plaintiff's screenplay, Barbara tries to derail the relationship by monopolizing her son's time, intruding on the couple's Valentine's Day celebrations, and lying to Julia that Kevin wants to end the couple's relationship. (Dkt 516, Ex. 1, 7, 21, 67-69.) On the other hand, Viola's tactics include trying to "buy-off" Charlie with $75,000, constantly entering the couple's apartment unannounced, and making outlandish wedding demands. (Dkt 516, Ex. 4, 453-458, 498.)

As discussed above, Julia and Charlie respond to Barbara and Viola's respective tactics in different ways. In Plaintiff's screenplay, Julia silently accepts Barbara's behavior and never confronts Kyle about his mother's abusive behavior until a climactic moment near the end of the screenplay. In stark contrast to Julia, Charlie confronts Kevin at three times about her concerns about Viola prior to the wedding day. (*Id.* at 448-450, 458-459, 470-472.) Charlie retaliates against Viola by entering Viola's apartment when she is not at home in search of hidden secrets; inviting Viola's secret lover, to the rehearsal dinner party; and poisoning Viola's pet parrot.

Finally, the climatic scenes when the mothers in laws schemes are revealed to the sons and when the couples' engagements are called off are also different. In Plaintiff's work the climax occurs abruptly and almost accidently. During an intimate moment, Julia brings up her concerns to Kyle about his mother. Kyle, in disbelief, accuses Julia of being jealous of his relationship with his mother and motions as if he is about to hit her. (Dkt 516, Ex. 1, 122-123.) Their heated argument is interrupted when he receives a call that Barbara was taken to the hospital and he is forced to leave. The relationship ends when Barbara, unbeknownst to Kyle, goes to Julia's home to collect Kyle's possessions, telling Julia that Kyle had asked Barbara to collect his things.

Conversely, in Defendants' screenplay, the climax occurs purposefully and as the result of immense tension when Viola in one last effort to derail the marriage, wears a sexy, white dress rather than her assigned maid-of-honor dress. A physical fight between Viola and Charlie ensues, with Kevin walking in. Charlie then insists that he chooses between the two women, but Kevin feeling torn, fails to act. Upset at this, Charlie concedes and walks out of her own wedding unmarried. These illustrations and several others indicate that the sequences of events between the two screenplays are incredibly different, thus weakening any claims of substantial similarity.

### 3. *Characters*

The characters in the parties' screenplays are presented very differently. Julia in Plaintiff's work is a successful, career-driven television journalist, who is determine to become an anchorwoman. Her investigative efforts to uncover a corporate scandal, eventually garners her the coveted anchorwoman role near the end of the story. She lives alone in a nice home, drives a luxury car, and comes from wealthy family. (*Id.* at 11, 41-43, 93.) On the other hand, Charlie in Defendants' work is a dog-walker, lives in apartment with two other women, and comes from a middle class family. (*Id.* at 417-421.) She does not have the same professional characteristics of her counterpart in Plaintiff's work. Moreover, as described above, apart from their professions, the two women also differ in their personalities: Julia patiently tolerates the abuse from her mother in law; Charlie ferociously responds in kind.

As to the other principal characters, the Court incorporates many of the same distinctions made in the Nov. 16 Order. Kyle in Plaintiff's screenplay is man who is under the control his mother, leaving Julia at Barbara's every whim, even during intimate moments. (Dkt 516, Ex. 1,7-8.) While in Defendants' screenplay, Kevin is still independent and often sides with Julia rather than Viola during disagreements. (Dkt 516, Ex. 4, 471-472, 493-495, 511.) The mother in law characters are also quite different. Plaintiff's work depicts Barbara, as an unhappy, "big woman" that lives in a poor neighborhood and appears in sweat suit when Julia arrives at her home. (Dkt 516, Ex. 2, 11.) In contrast, Viola lives in an upscale neighborhood and is obsessed with her appearance never appearing in public without designer clothes and make-up. (Dkt 516, Ex. 4, 424, 440, 450.) Based on their differences in personalities, professions, and other characteristics, the characters in the parties' screenplays are distinctive.

### 4. *Mood*

Plaintiff and Defendants' screenplays have drastically different moods. As the Court noted in the Nov. 16 Order and consistent with the screenplays, Plaintiff's work is a rather dark drama, as evidenced by the characters fighting, crying, and frequent use of expletives throughout the screenplay. There is a scene which Kyle gestures as if he is about to hit Julia. (Dkt 516, Ex. 1, 122-123.) Barbara's attempts to derail the marriage are dark-hearted and psychological. (*Id.* at 47-48, 68-69, 100.) Julia tolerates the abuse until she can no longer stand it and then leaves the relationship. There is a subplot involving the murder of a person who filed a lawsuit against a corporation who Kyle, a lawyer, represents. Kyle suspects his client may be involved in the murder. All of these elements give Plaintiff's work a heavy theme and a dark mood.

Defendants' work in contrast, is a comedy. Viola designs outrageous plans to derail her son's relationship. She puts strawberries in Charlie's food the night before the wedding, even though she knows Charlie is allergic to them. (Dkt 516, Ex. 4, 501, 509.) To add to the comedy, Charlie fights back with her owns plans by meeting with Kevin's past girlfriends who have been driven away by Viola and making Viola wear a hideous maid-of-honor dress (*Id.* at 467-468, 475-476.) These events and many more give Defendants' screenplay a light mood and a comic genre, unlike Plaintiff's dark and dramatic mood.

### 5.   *Theme*

The predominate theme in the parties' works are distinctive and develop in different ways. In Plaintiff's screenplay, the predominate theme is 'Mothers in law: a common problem in modern relationships', demonstrated by the various dysfunctional mother-son-girlfriend relationships featured in the screenplay. In contrast, Defendants' general theme is 'Personal courage triumphs over adversity', demonstrated by how Julia, the lower-class girlfriend finds the courage to fight back and triumphs over Viola, the classist, mean-spirited mother in law.

The two different thematic concepts also developed in different ways. Plaintiff's theme is developed by examining not only Julia's relationship with Kyle and Barbara, but spends considerable time examining at least ten other mother-son-girlfriend relationships. Great emphasis is placed on other characters' relationships. There are several subplots and scenes, such as the group therapy sessions, where other characters share at length their tense and sad stories about their relationships. (Dkt 516, Ex. 1, 61-63, 71-73, 88-92, 103-106, 113-121.) Thus, Plaintiff's screenplay takes a more societal rather than individual perspective on the matter.

Unlike Plaintiff's societal investigation, Defendants' primary theme of courage triumphing over adversity is explored almost exclusively through the interactions between Charlie, Viola, and Kevin. Defendants' screenplay delves into the main characters' relationships in much greater depth than in Plaintiff's screenplay. Specifically, the relationship between Charlie and Viola is the dominant vehicle to develop the theme. Hence, a comparison of the opposing works reveal that they have different themes that ultimately develop in different ways.

### 6.   *Settings*

The settings are also very dissimilar. For example, the general settings are different; Barbara lives in a poor neighborhood in Washington, D.C., while Viola lives in an wealthy neighborhood in San Francisco, California. Critical events also occur in different settings. In Plaintiff's work, Kyle proposes to Julia privately in their hotel room during a romantic weekend getaway, while Defendants' couple is engaged in public at a local restaurant. In Plaintiff's screenplay, Barbara informs Julia of her disapproval of the couple's engagement in Julia's home; whereas in Defendant's screenplay, Viola reveals her disapproval while the two women are having lunch at a high-end hotel. Each work also features settings unique to their screenplays. Plaintiff's unique settings include a courtroom, protagonist's parents home, and the set of the Jerry Springer talk show. Defendants' unique settings include a spa and the wedding venue.

### 7.   *Dialogue*

The dialogues also differ, as the dialogue in Plaintiff's screenplay is noticeably more abrasive than the comedic language in Defendants' screenplay. In Plaintiff's screenplay, Julia frequently uses expletives in daily conversation, as does several over other characters, whereas Defendants' characters use virtually none. This distinction is particularly apparent at the climatic moments. In Plaintiff's screenplay, the climatic dialogue uses expletives repeatedly and other slang language. In Defendants' screenplay, despite the characters' anger and physical fighting, the dialogue remains void of expletives, and maintains its comedic demeanor. *Compare* Plaintiff's dialogue Dkt 516, Ex. 1, 122-123 *to* Defendants' dialogue Dkt 516, Ex. 1, 122-123.

### 8.   *The Differences Significantly Outweigh the Similarities*

The Court recognizes that some similarities exist. For example, in both screenplays, the mothers incessantly call their sons, fake illnesses to draw their sons away, bring back their sons' ex-girlfriends,

Case 2:09-cv-02231-RGK-RZ Document 656 Filed 01/07/11 Page 51 of 67 Page ID
Case 2:09-cv-02231-RGK-RZ Document 622 Filed 08/13/10 Page 8 of 11 Page ID
#:16889
#:16808

and hire a private investigator to search into Julia and Charlie's past. They also do their sons' laundry and live in the same building as their sons. Both Julia and Charlie seek advice from friends and therapists as they struggle with the mothers in law. There are also some shared generic themes of family, relationships, and love, as well as a similar narrative pace.

The majority of the asserted similarities, however, flow from the screenplays' shared generic plot of mothers who scheme to derail their sons' pending marriage to women who the mothers disapprove of. *See Benay*, 607 F.3d at 625 (holding that similarities, such as "fish-out-of-water" theme and physical settings, arise naturally out of the opposing works' shared plot of an American war veteran who travels to Japan to fight Samurai). Thus, most of the similarities cannot be taken into consideration when determining whether the works are substantially similar.

Removing these irrelevant similarities from the Court's consideration, the remaining similarities are insufficient to overcome the differences in order to satisfy the extrinsic test. In *Funky Films*, the parties' opposing works shared a common storyline about a small funeral home run by two brothers who take over their family business in the wake of their father's death. 462 F.3d at 1077. Despite a shared plot and numerous other similarities, the Ninth Circuit held that the works were not substantially similar. The Ninth Circuit found the differences so overwhelming and significant as to overcome the numerous similarities. Here, similar to the comparison in *Funky Films*, the remaining similarities pale in far comparison to the vast differences in plot, sequences of events, pace, characters, themes, mood, and dialogue between the screenplays as discussed above.

In summary, any similarities between Plaintiff's Second version of her screenplay, and Defendants' Jan. 2003 screenplay exist at a high level of generality and are thus not protected under federal copyright law. *Benay*, 607 F.3d at 629. Plaintiff's work is complex drama about how a woman tolerates and copes with her emotionally abusive mother-to-be. Defendants' work is strikingly dissimilar as it is a comedic story of one-upmanship between a bride-to-be and her outrageous mother in law. The parties' works are not substantially similar in their plot, sequence of events, characters, mood, theme, settings, or dialogue.[3] Therefore, the extrinsic test is not met, and the Court dismisses Plaintiff's copyright infringement claims with respect to the Second version of her screenplay.

## B. Plaintiff's Second Screenplay is Substantially Similar to Defendants' Subsequent Screenplays

Even if Defendant's Jan. 2003 screenplay did not infringe upon Plaintiff's Second screenplay, Plaintiff nonetheless alleges that one of Defendants' eighteen draft screenplays, provided by Defendants in discovery, infringed upon Plaintiff's work. In copyright actions, courts are not required to review each of the defendant's alleged infringing work; courts need only review the infringing works to the point that a reasonable determination about whether substantial similarity exists may be made. *Funky Films*, 462 F.3d at 1076. In *Funky Films*, the Ninth Circuit reviewed only the first three episodes of the defendants' multi-season television series to determine that the defendants' television series was not substantially similar to the plaintiff's screenplay. *Id.*

Here, the Court reviewed all five of Defendants' submitted screenplays. The Court finds that Defendants' subsequent drafts are not substantially similar to Plaintiff's Second screenplay because

---

[3] The extrinsic test can also be satisfied if there are "so many generic similarities" between the two works appear in a "particular sequence" in both works. *Metcalf v. Bocho*, 294 F.3d at 1073-1074 (9th Cir. 2002). Here, after reviewing the similarities, the Court did not find so many significant generic similarities to exist in the same sequence of events to warrant finding substantial similarity between the two works. *See* Dkt 421, 3, n.1.

Defendants' general storyline remains the same throughout the various drafts. Furthermore, changes from draft-to-draft are generic or are made to elements that are not protectable. For example, many of the changes in Defendants' subsequent drafts revolve around the characters' professions and the natural events that flow from those professions. Defendants' mother in law character in the Nov. 2003 draft is a retiring fashion magazine executive, who in later drafts is a television talk show host. The mother in laws' confidante character evolves from draft-to-draft from Viola's lover, to a rich socialite, then from a humble housekeeper to a sarcastic personal assistant.

New or additional scenes added to subsequent drafts simply enhance the battle between Viola and Charlie, but does not alter the premise of the story. In Defendant's Nov. 2003 and subsequent drafts, Viola does not live in the same building as her son, but makes an excuse to comes to live with the couple for several weeks. In Defendants' Feb. 2004 draft, Viola organizes a lavish black-tie event, which she purposefully uses to embarrass Charlie by having Kevin auctioned off in a live auction as an "eligible bachelor", even though she knows Kevin is engaged to Charlie. Due to these immaterial changes between the drafts, the Court finds Plaintiff's Second screenplay and Defendants' submitted screenplays are not substantially similar.

This analysis also leads the Court to believe that a further investigation of Defendants' drafts beyond the five already reviewed would have no bearing on the outcome of this decision. The drafts reviewed ranged from Defendants' earliest submitted full screenplay through to a draft from two months after filming began, and several intermittent drafts in between. A review of the changes from draft-to-draft reveal most changes were made to elements that are not copyright protectable, and thus immaterial to the substantial similarity analysis. Based on this trend, it follows that changes to Defendants' other drafts would also be insignificant. Further, Plaintiff failed submit any additional reasons or analysis to persuade the Court to conclude otherwise.[4] Therefore, the Court finds that Plaintiff is unable to establish substantial similarity between Plaintiff's Second version of her screenplay and Defendants' subsequent screenplays.

### C.   Plaintiff's Third and Fourth Versions of her Screenplay Are Not Substantially Similar to Defendants' Screenplays

As the Court noted in its Nov. 16 Order, the Third and Fourth versions of Plaintiff's screenplay contains the same basic story of the second version. "Yet, a series of subplots and secondary characters take the later versions to an entirely new direction . . . ." (Dkt 421, 5-6.) This results in even greater distinctions between Defendants' screenplays, and Plaintiff's Third and Fourth versions, than the comparison to Plaintiff's Second version yielded above. (*Id.*) Since the Court already established that Plaintiff's Second version and Defendants' screenplays are not substantially similar, it follows that Plaintiff's Third and Fourth versions are also not substantially similar to Defendants' screenplays

Plaintiff's Third version includes a more prominent corporate scandal. It also include two

---

[4] Even a cursory review of additional drafts and treatments of Defendants screenplay, beyond the five reviewed in this decision, reveals that the parties' works are very different. For example, reviewing Defendants' earliest submitted document, the May 2001 screenplay treatment (summary), demonstrates apparent differences. (Dkt 584-7, Ex. 17.) The story features the girlfriend and boyfriend deciding to marry mainly because the girlfriend becomes pregnant. The mother-in-law character infuriated by the engagement frames the girlfriend for murder of her boyfriend's other lover, and conspires with several people to send the girlfriend to prison. After spending several years in prison, the girlfriend miraculously escapes and becomes wealthy, and then exacts revenge on all those who conspired to send her to prison. This story is in stark contrast to Plaintiff's basic story as described *infra* and *supra*. From draft-to-draft, Defendants' storyline evolves, but consistently remains distinct from Plaintiff's works.

additional scenes of violent crime: a stabbing scene; and a car theft scene in which two "thugs" shoot one of the characters at short range. (Dkt 516, Ex. 2, 143, 254-255.) The Fourth version features a gruesome suicide scene: a man shoots himself in the head through his mouth; blood spatters everywhere, even on his wife's face. (Dkt 516, Ex. 3 286-286.) The police wrongfully arrests his wife charging her with murder. The main couple - a journalist and an attorney - then team together to free the innocent wife. (Dkt 516, Ex. 3 403-405, 406-410.) The Court finds the subplots and the secondary characters in the Third and Fourth versions of Plaintiff's screenplay too far apart from Defendants' screenplays to warrant additional discussion of substantial similarity. Therefore, as a matter of law, Plaintiff will not be able to establish that Defendants have infringed upon the copyrights of her Third and Fourth versions of her screenplay.

## D.    The Court Finds it Unnecessary to Review Plaintiff's First Screenplay

Plaintiff claims that Defendants' works also infringed upon the First version of her screenplay. Based on upon Plaintiff's dilatory actions in pursuing these claims, the Court finds it unnecessary to review the First version of her screenplay for alleged acts of copyright infringement.

Prior to filing her Complaint, Plaintiff had ample opportunity to register her First version, since she completed it in 1998. Yet, Plaintiff waited nearly *twelve years* after completing the First version and two years after filing the Original Complaint (May 13, 2008) to register it on May 26, 2010. This behavior stands in stark contrast to her treatment of the other versions of her screenplay. She completed the Second version in Spring 2000 and registered it immediately thereafter; she then registered the Third and Fourth versions on May 12, 2008, one day prior to filing her original Complaint. Plaintiff's treatment of the Second, Third, and Fourth versions demonstrates that she understood the legal significance of registration. Despite this understanding, she found it unnecessary to register her First version until two years after this litigation started, suggesting that the Second, Third, and Fourth version presented the strongest claims of infringement.

Plaintiff also had ample opportunities to include claims related to her First version in the Complaint. Yet, Plaintiff intentionally chose not to file such claims either in her Original Complaint (May 13, 2008) or her First Amended Complaint (October 3, 2008). Plaintiff did not file claims related to First version, even after the Court granted Plaintiff leave to file a Second Amended Complaint (August 21, 2009) for the purpose of adding claims related the Third and Fourth versions of her screenplay. Plaintiff's conduct highlights either a serious lack of diligence or the weakness in her claims related to her First version.

Plaintiff ultimately filed an Ex Parte Application to Amend the Complaint, a third time, in part to add these claims, but the Court denied Plaintiff's request on June 3, 2010. The Court found the application to be untimely. Morever, Plaintiff failed to state why the facts or claims that she sought to add could not have been asserted in the first place, or at least when the Court reopened the case in Feb. 2010. (Dkt 497, 2.) Similar the June 3, 2010 Order, the Court finds that a review of the First version of Plaintiff's screenplay would be futile. Plaintiff unreasonably delayed pursuing her claims and provided no explanation for her dilatory actions. Therefore, based on her failure to diligently pursue these claims, the Court declines to review Plaintiff's First version of screenplay and dismisses Plaintiff's claims in their entirety.

In any event, even if Plaintiff filed her claims expeditiously, the First version of her screenplay and Defendants' screenplays are not substantially similar. The corporate scandal sub-plot is much more dominant in the First version than in either the Second or Third versions of Plaintiff's screenplay. (Dkt 579- 4, Ex. C.) The focus on the corporate scandal takes Plaintiff's story is a very different direction than Defendants' works. More emphasis is placed on the relationship between Julia and Crystal, the corporate whistler-blower. There are several additional scenes including a murder, a police

investigation, and lengthily courtroom testimony. Furthermore, similar to the other comparisons, the vast majority of Plaintiff's asserted similarities are not protected as they flow from a shared basic plot or are familiar stock scenes. *Benay*, 607 F.3d at 614.

### E.  The Court Dismisses Plaintiff's RICO Claims

Plaintiff's RICO claims are based on copyright infringement. Since the Court finds that Plaintiff cannot prevail in her copyright claims, the Court also dismisses Plaintiff's RICO claims.

### F.  Remaining Matters

The Court resolves the remaining matters in light of the conclusion that the parties' works lack substantial similarity. In regards to Defendants' July 15 and July 20, 2010 Ex Parte Applications to Strike Plaintiff's Untimely Opposition, the Court finds it unnecessary to review this matter, in light of the decision to grant Defendants' Motion for Summary Judgement. (Dkt 570 and 598.) The Court declines to review the Application of Randall T. Garteiser to Withdraw as Attorney, as the issue is moot in light of the dismissal of the claims. (Dkt 560 and 586.) The Court denies Defendants' June 23, 2010 and Plaintiff's June 28, 2010 Ex Parte applications to file exhibits under seal. (Dkt 545 and 547.) The Court also denies Defendants' June 18, 2010, Plaintiff's July 22, 2010 and August 3, 2010 Ex Parte applications for protective orders. (Dkt 507, 602, and 621.) The Court did not rely on any documents in the aforementioned applications, for which the seals and orders were requested, in making the determination that substantial similarity does not exist between the parties' works. There are no other compelling reasons to resolve any other remaining matters in light of the Court's finding that the works are not substantially similar.

## V.  CONCLUSION

After reviewing the parties' screenplays in their entireties, the Court finds that there are no genuine issues of material fact and Defendants' works are not substantially similar to Plaintiff's screenplays. Thus, Plaintiff fails to establish valid claims for copyright infringement. Based on the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgement.

Also, for the reasons offered above, the Court **DENIES** Defendants' June 18, 2010, Plaintiff's July 22, 2010 and August 3, 2010 Ex Parte applications for protective orders. (Dkt 507, 602, and 621.) The Court **DENIES** Defendants' June 23, 2010 and Plaintiff's June 28, 2010 Ex Parte applications to file exhibits under seal. (Dkt 545 and 547.) The Court **DENIES as moot** the application of Randall T. Garteiser to Withdraw as Attorney (Dkt 560 and 586), and Defendants' July 15 and July 20, 2010 Ex Parte Applications to Strike Plaintiff's Untimely Opposition. (Dkt 570 and 598.)

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer   slw

1  WHITE O'CONNOR FINK & BRENNER LLP
    Lee S. Brenner (STATE BAR NO. 180235)
2    Allison S. Brehm (STATE BAR NO. 224029)
   10100 Santa Monica Boulevard, Twenty-Third Floor
3  Los Angeles, California 90067-4008
   Telephone: (310) 712-6100
4  Facsimile: (310) 712-6199
   lbrenner@whiteo.com
5  abrehm@whiteo.com

6  Attorneys for Thirty-Four Defendants

7

8              **UNITED STATES DISTRICT COURT**

9      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| 10  Sheri H. Gilbert, an individual, | CASE NO. 2:09-cv-02231 RGK (RZ) |
| 11                  Plaintiff, | [PROPOSED] JUDGMENT DISMISSING PLAINTIFF'S SECOND AMENDED COMPLAINT |
| 12        v. | |
| 13  NEW LINE PRODUCTIONS, INC., a | [Fed. R. Civ. P. 56; Local Rule 56-1] |
| California Corporation; NEW LINE | |
| 14  HOME ENTERTAINMENT, INC., a | |
| New York Corporation; NEW LINE | |
| 15  INTERNATIONAL RELEASING, | |
| INC., a California Corporation; NEW | |
| 16  LINE TELEVISION, INC., a California | |
| Corporation; NEW LINE CINEMA | |
| 17  CORPORATION, a Delaware | |
| Corporation; TURNER | |
| 18  BROADCASTING SYSTEM, INC., a | |
| Georgia Corporation; WARNER | |
| 19  HOME VIDEO INC., a Delaware | |
| Corporation; WARNER BROS. HOME | |
| 20  ENTERTAINMENT, INC., a Delaware | |
| Corporation, formerly d/b/a Warner | |
| 21  Home Video, Inc.; WARNER BROS. | |
| ENTERTAINMENT INC., a Delaware | |
| 22  Corporation; WARNER | |
| COMMUNICATIONS INC., a | |
| 23  Delaware Corporation; TIME | |
| WARNER, INC., a Delaware | |
| 24  Corporation; BENDER-SPINK, INC., a | |
| California Corporation; CHRIS | |
| 25  BENDER, individually and as an agent | |
| of Bender-Spink, Inc.; J.C. SPINK, | |
| 26  individually and as an agent of Bender- | |
| Spink, Inc.; SPRING CREEK | |
| 27  PRODUCTIONS, INC., a California | |
| Corporation; PAULA WEINSTEIN, | |
| 28  individually and as an agent of Spring | |

258383.1.doc

1   Creek Productions, Inc.; AVERY PIX,
    INC., a California Corporation;
2   AVERY PRODUCTIONS, INC., a
    California Corporation; KUMAR
3   MOBILIENGESELLSCHAFT MBH &
    CO. PROJEKT NR. 1 KG, a German
4   Company; MICHAEL FLYNN;
    NUYORICAN PRODUCTIONS, INC.,
5   a California Corporation; JULIO
    CARO; ROBERT LUKETIC;
6   FIRECRACKER PRODUCTIONS,
    INC., a California Corporation; ANYA
7   KOCHOFF, a/k/a Anya Kochoff
    Romano, f/k/a Anya Kochoff Landes,
8   individually and as an agent of
    Firecracker Productions, Inc.;
9   WRITTEN IN STONE, INC., a
    California Corporation; RICHARD
10  LAGRAVENESE, individually and as
    an agent of Written in Stone, Inc.;
11  JANE FONDA; JENNIFER LOPEZ,
    individually and as an agent of
12  Nuyorican Productions, Inc.;
    MICHAEL VARTAN; WANDA
13  SYKES; MIGUEL A. NUNEZ, JR.;
    VILLAGE ROADSHOW PICTURES
14  ENTERTAINMENT INC., a Delaware
    Corporation; VILLAGE ROADSHOW,
15  LTD, an Australian Corporation;
    SANTA FE PRODUCTIONS NV, a
16  Belgian Public Limited Liability
    Company, d/b/a Paradiso
17  Entertainment; PARADISO
    ENTERTAINMENT NEDERLANDS
18  BV, a Dutch Private Limited Company;
    PARADISO HOME
19  ENTERTAINMENT, a Dutch
    Company; ENTERTAINMENT FILM
20  DISTRIBUTORS LTD, a British
    Corporation; METROPOLITAN
21  FILMEXPORT, a French Corporation;
    CW MEDIA, INC., a Canadian
22  Corporation, f/k/a Alliance Atlantis
    Communications Inc., d/b/a Motion
23  Picture Distribution LP; CW MEDIA
    SALES INC./CW VENTES MEDIA
24  INC., a Canadian Corporation;
    CANWEST GLOBAL
25  COMMUNICATIONS CORP., a
    Canadian Corporation; ALLIANCE
26  FILMS, INC., a Canadian Corporation,
    f/k/a Alliance Atlantis Communications
27  Inc., d/b/a Motion Picture Distribution
    LP; YLEISRADIO OY, a/k/a YLE, a
28  Finnish Company; FS FILM OY, a

258383.1.doc

[PROPOSED] JUDGMENT DISMISSING PLAINTIFF'S SECOND AMENDED COMPLAINT

1  Finnish Company; DISTRIBUTION
   COMPANY, S.A., an Argentinean
2  Company; THE ENDEAVOR
   AGENCY, LLC, a Delaware Limited
3  Liability Company; ADRIANA
   ALBERGHETTI, individually and as an
4  agent of the Endeavor Agency, LLC;
   THE INDEPENDENT FEATURE
5  PROJECT, INC., a New York
   Corporation; FILM INDEPENDENT,
6  INC., a California Corporation, f/k/a
   Independent Feature Project/West; and
7  DOES 1 through 10, inclusive,

8          Defendants.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

258383.1.doc

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2    By written Order dated November 16, 2009 (Dkt. 421), as modified by

3  written Order dated February 17, 2010 (Dkt. 448), the Court dismissed all of

4  Plaintiff Sheri H. Gilbert's copyright claims based on the motion picture *Monster-*

5  *in-Law* against all of the defendants, finding that Plaintiff's works are not

6  substantially similar to the motion picture *Monster-in-Law* within the meaning of

7  the Copyright Act.

8    By written Order dated June 3, 2010 (Dkt. 497), the Court granted fifteen

9  defendants' motion for a judgment on the pleadings, dismissing all of Plaintiff's

10  remaining claims against the following defendants: CW Media Inc.; Distribution

11  Company Argentina S.A.; Jane Fonda; Jennifer Lopez; Robert Luketic; New Line

12  Home Entertainment, Inc.; New Line International Releasing, Inc.; New Line

13  Television, Inc.; Wanda Sykes; Time Warner, Inc.; Michael Vartan; Warner Bros.

14  Entertainment Inc.; Warner Bros. Home Entertainment, Inc.; Warner

15  Communications Inc.; and Warner Home Video Inc.

16    By written Order dated August 13, 2010 (Dkt. 624), the Court dismissed

17  Plaintiff's remaining claims against the following defendants: Adriana Alberghetti;

18  Avery Pix, Inc.; Chris Bender; Bender-Spink, Inc.; Julio Caro; Film Independent,

19  Inc.[1]; Firecracker Productions, Inc.; Michael Flynn; Anya Kochoff; Kumar

20  Mobiliengesellschaft mbH & Co. PROJEKT NR. 1 KG; Richard LaGravenese; New

21  Line Cinema Corporation; New Line Productions, Inc.; Nuyorican Productions, Inc.;

22  J.C. Spink; Spring Creek Productions, Inc.; The Endeavor Agency, LLC; Turner

23  Broadcasting System, Inc.; Paula Weinstein; and Written In Stone, Inc.

24  / / /

25  / / /

26  

27  [1] Defendant Film Independent, Inc. was represented by separate counsel.

28  

258383.1.doc              1
[PROPOSED] JUDGMENT DISMISSING PLAINTIFF'S SECOND AMENDED COMPLAINT

1  NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that:

2      1.    Pursuant to the Court's Orders dated November 16, 2009 (as modified

3  on February 17, 2010), June 3, 2010, and August 13, 2010, all of which are

4  incorporated herein by reference, Plaintiff's Second Amended Complaint, and each

5  cause of action therein, is dismissed in its entirety, with prejudice.

6      2.    The defendants are the prevailing parties in this action and are entitled

7  to their costs.

8      3.    Requests for attorneys' fees may be made by regularly noticed motion

9  to the Court, pursuant to Rule 54 of the Federal Rules of Civil Procedure and any

10  other applicable rules and statutes, including Section 505 of the United States

11  Copyright Act.

12      4.    Requests for costs may be made by application to the Clerk of the

13  Court, pursuant to Rule 54 of the Federal Rules of Civil Procedure, and any other

14  applicable rules and statutes.

15  DATED: ~~SEP 2 2 2010~~

16

17  _____

18  The Honorable R. Gary Klasuner
    United States District Judge

19

20  Presented By:
    White O'Connor Fink & Brenner LLP

21      s/Lee S. Brenner
    _____

22      Lee S. Brenner
    Attorneys for Thirty-Four Defendants

23

24

25

26

27

28

258383.1.doc

2

[PROPOSED] JUDGMENT DISMISSING PLAINTIFF'S SECOND AMENDED COMPLAINT

# UNITED STATES DISTRICT COURT
### Central District of California

SHERI H. GILBERT

**V.**

NEW LINE PRODUCTIONS, ET AL.

## BILL OF COSTS (LOCAL RULE 54-4)

Case Number: 2:09-CV-02231 RGK(RZ)

Judgment having been entered in the above entitled action on ___9/29/2010___ against __SHERI H. GILBERT__ ,
the Clerk is requested to tax the following as costs:                                      Date

| | |
|---|---|
| Filing fees: see L.R. 54-4.1 | $        0.00 |
| Fees for service of process: see L.R. 54-4.2 | $4,502.31  ~~3,756.31~~ |
| United States Marshal's fees: see L.R. 54-4.3 | 0.00 |
| Clerk's fees: see L.R. 54-4.4 | 0.00 |
| Report's transcripts: see L.R. 54-4.5 | -0-  ~~159.30~~ |
| Depositions: see L.R. 54-4.6 | 5,133.50 |
| Witness fees (itemize on page 2): see L.R. 54-4.7 | 228.99 |
| Interpreter's and translator's fees: see L.R. 54-4.8 | 0.00 |
| Docket fees: see L.R. 54-4.9 | 0.00 |
| Masters, commissioners and receivers: see L.R. 54-4.10 | 0.00 |
| Certification, exemplification and reproduction of documents: see L.R. 54-4.11 | 4,322.28 |
| Premiums on bonds and undertakings: see L.R. 54-4.12 | 0.00 |
| Other Costs: see L.R. 54-4.13 | -0-  ~~3,618.58~~ |
| State Court costs: see L.R. 54-4.14 | 0.00 |
| Costs on appeal: see L.R. 54-5 | 0.00 |
| Cost of a bankruptcy appeal to the District Court: see L.R. 54-6 | 0.00 |

Other (please itemize)

| | |
|---|---|
| | 0.00 |
| | 0.00 |
| | 0.00 |
| **TOTAL** | $14,187.08  ~~19,217.96~~ |

<u>NOTE TO PARTIES SUBMITTING BILL OF COSTS:</u> Attach to the bill of costs an itemization and documentation
supporting all requested fees and costs. Documentation includes receipts, orders and stipulations. All receipts must be self-explanatory.

### DECLARATION

I declare under penalty of perjury that the foregoing costs are correct and were necessarily incurred in this action and that the services
for which fees have been charged were actually and necessarily performed. A copy of this bill has been served on all parties in the
following manner:

[ X ] Electronic service by e-mail as set forth below and/or.

[   ] Conventional service by first class mail, postage prepaid as set forth below

s/ Attorney: __/s Lee S. Brenner__

Name of Attorney: __Lee S. Brenner__

Costs are taxed in the amount of ~~19,217.96~~ $14,187.08

**TERRY NAFISI**

_____          By: _Lydia Yurtchuk_ _____          __12/2/10__
Clerk of Court                          Deputy Clerk Lydia Yurtchuk                Date

_____
CV-59 (06/10)                                    **BILL OF COSTS**                          Page 1 of 3

Exhibit A
2

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 09-02231-RGK (RZx) | Date | December 6, 2010 |
| Title | GILBERT v. NEW LINE PRODUCTIONS, INC., et al. | | |

| | | |
|---|---|---|
| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS)** Order Re Defendants' Motion for Attorneys' Fees and Costs (DE 635)

## I.     INTRODUCTION

Sheri Gilbert ("Plaintiff") alleged that thirty-four Defendants named in the Second Amended Complaint (collectively, "Defendants") copied her screenplay, "When Mom Is the Other Woman," and ultimately turned it into the movie "Monster in Law" ("MIL" or the "Movie"). Plaintiff wrote four different versions of her screenplay and obtained copyright registration for versions two, three, and four. Plaintiff alleged that the Movie and its draft screenplays infringed her works in violation of the Copyright Act of 1976. 17 U.S.C. § 101, et seq. Plaintiff also claimed that Defendants engaged in a pattern of racketeering activity to copy her work and share the profits in violation of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. § 1962, et seq.

On August 13, 2010, the Court granted Defendants' Motion for Summary Judgment. Presently before the Court is Defendants' Motion for Attorneys' Fees and Costs pursuant to 17 U.S.C. § 505 ("Section 505") and Federal Rule of Civil Procedure 54. For the following reasons, the Court **GRANTS** Defendants' Motion.

## II.     JUDICIAL STANDARD

The Copyright Act of 1976 permits a court to "award a reasonable attorneys' fee to the prevailing party." 17 U.S.C. § 505. Attorneys' fees are proper when either successful prosecution or successful defense of the action furthers the purposes of the Copyright Act. See *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996). In determining whether a party is entitled to attorneys' fees, courts must apply the same standard to prevailing plaintiffs and defendants. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). "[A]n award of attorneys' fees to a prevailing defendant that furthers the underlying purposes of the Copyright Act is reposed in the sound discretion of the district courts." *Fantasy*, 94 F.3d at 555.

## III.   **DISCUSSION**

Defendants contend that as the prevailing parties, they are entitled to attorneys' fees and costs pursuant to Section 505. The Court agrees.[1]

### A.   **Defendants Are the Prevailing Party**

A prevailing party is "one who has been awarded some relief by [a] court. . . ." *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health and Human Res.*, 532 U.S. 598, 603 (2001). On August 13, 2010, the Court granted Defendants' Motion for Summary Judgment. Therefore, Defendants are the prevailing parties for purposes of awarding attorneys' fees and costs. At issue is whether the relevant facts support an award of attorneys' fees.

### B.   **The Facts Weigh In Favor of Awarding Attorneys' Fees and Costs**

A court should consider the following factors in deciding whether to award a prevailing defendant attorneys' fees: (1) defendant's degree of success obtained on the claim, (2) the frivolousness of plaintiff's claim, (3) the objective reasonableness of plaintiff's factual and legal arguments, (4) plaintiff's motivation in bringing the lawsuit, and (5) the need for compensation and deterrence. *Fantasy*, 94 F.3d at 558.

The Court addresses each of these factors separately below.

#### 1.   *Degree of Success*

Defendants argue that this factor favors an award of attorneys' fees because the Court determined that Plaintiff's copyright infringement claims were without merit. The Court agrees.

A party's degree of success in a lawsuit should be considered in determining whether to award attorneys' fees. *See Fantasy*, 94 F.3d at 556. This factor weighs more in favor of a party who prevailed on the merits, rather than on a technical defense. *See id.* Here, Defendants prevailed on Plaintiff's copyright claims on two occasions: (1) on November 16, 2009, the Court granted Defendants' Motion to Dismiss; and (2) on August 13, 2010, the Court granted Defendants' Motion for Summary Judgment. On both occasions, the Court reached the merits of the claims, concluding that there was an absence of substantial similarity between Plaintiff's work and MIL under the extrinsic test. Therefore, Defendants achieved complete success in pursuing their copyright defense.

Accordingly, this factor weighs heavily in favor of awarding attorneys' fees to Defendants.

#### 2.   *Frivolousness*

A frivolous claim is one which lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 112 S.Ct. 1728, 1733 (1992). Defendants contend that this factor favors an award of attorneys' fees because the Court found that Plaintiff's claims fell far short of establishing that there was

---

[1]As an initial matter, the Court finds that Defendants have timely filed their Motion for Attorneys' Fees and Costs. Plaintiff argues in her Opposition that Defendants' motion was untimely because it was not filed 14 days after entry of judgment. Fed. R. Civ. P. 54(d)(2)(B)(i); (Pl.'s Opp'n 5:12-7:2). However, Federal Rule of Civil Procedure 54 is satisfied because Defendants' Motion was filed on October 7, 2010, exactly 14 days after judgment was entered on September 23, 2010.

substantial similarity between Plaintiff's work and MIL. The Court agrees.

To successfully establish a copyright infringement claim, a plaintiff has to demonstrate (1) plaintiff's ownership of the copyright, (2) the defendant's access to plaintiff's work, and (3) substantial similarity between plaintiff's work and the allegedly infringing material. *Berkic v. Crichton*, 761 F.2d 1289, 1291-92 (9th Cir. 1985). Only the third issue was contested, and the Court held on multiple occasions that Plaintiff failed to prove that MIL was substantially similar to Plaintiff's work as a matter of law.

On November 16, 2009, the Court granted Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) after determining that Plaintiff would not be able to establish that her work was substantially similar to MIL. The Court found that although there were some "generic similarities" between Plaintiff's work and MIL, they paled "in comparison to vast differences in characters, plot, mood, and themes between the two works." (Order Granting Defs.' Mot. to Dismiss at 4.) In addition, the Court held that the "issue of substantial similarity between Plaintiff's works and [MIL] . . . is not a close one." (Order Granting Pl.'s Mot. for Recons. at 3.)

On August 13, 2010, the Court granted Defendants' Motion for Summary Judgment and held that Plaintiff's draft screenplays and MIL were not substantially similar. The Court alluded to the frivolousness of Plaintiff's claims by noting that "Plaintiff attempt[ed] to manufacture substantial similarities between the parties' works by mixing and matching various elements that exist in different screenplays without attention to their origin or context." (Order Granting Defs.' Mot. for Summ. J. at 3.) The Court also denied Plaintiff's Motion for Leave to Appeal in *Forma Pauperis* because it was "not taken in good faith," was "frivolous," and did not "present a substantial question." (Order Den. Pl.'s Mot. for Leave to Appeal.) This Court has continually held that the argument that MIL and Plaintiff's work are substantially similar is without any legal basis.

Plaintiff contends that the lawsuit was not frivolous because the Court granted her Motion for Reconsideration of the Order granting Defendants' Motion to Dismiss. The Motion for Reconsideration allowed Plaintiff to assert copyright infringement claims based on earlier versions of MIL's screenplay (the "screenplay claims"). Plaintiff argues that this ruling demonstrates that the claim was not frivolous because the Court acknowledged that her screenplay claims were "viable." However, the Court granted Plaintiff's Motion for Reconsideration because Plaintiff failed to address the screenplay claims in her Opposition to the Motion to Dismiss. Moreover, the Court expressly stated that its "ruling d[id] not concern the merits of the screenplay claims . . . [i]t merely allow[ed] Plaintiff to litigate the screenplay claims as separate and independent allegations of infringement against Defendants." (Order Granting Pl.'s Mot. for Recons. at 2.) Therefore, the Order granting Plaintiff's Motion for Reconsideration should not be interpreted as an acknowledgment of the substantive strength of the screenplay claims. Rather, it was a ruling premised on procedural viability. Furthermore, the Court ultimately rejected the screenplay claims on the merits.

Accordingly, this factor weighs in favor of awarding attorneys' fees to Defendant.

3.   *Objective Reasonableness of Factual and Legal Issues*

This factor requires a court to consider the objective reasonableness of a party's claims, "both in the factual and in the legal components of the case." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1120 (9th Cir. 2007). Defendants argue that Plaintiff's case was objectively unreasonable because the Complaint only alleged generic similarities between Plaintiff's work and MIL. The Court agrees.

This factor weighs in favor of awarding attorneys' fees for the same reasons discussed in the "frivolousness" section above. The Court continually held that the argument that MIL was substantially

similar to Plaintiff's work was without merit. Plaintiff was only able to point to some generic similarities between the two works that were not protected under copyright law. As a result, the Court finds that Plaintiff's claims against Defendants were objectively unreasonable.

Accordingly, this factor weighs in favor of awarding attorneys' fees to Defendant.

    *4.*    <u>*Motivation*</u>

Defendants argue that this factor favors an award of attorneys' fees because the Plaintiff's litigation strategy demonstrates that she had an improper motive—to make the litigation as expensive as possible. Defendants contend that Plaintiff employed dilatory tactics, such as repeatedly amending her pleading to avoid a substantive ruling, and including multiple defendants in the lawsuit without justification. The Court agrees.

Courts generally hold that a finding of bad faith can be based on "not only the actions that led to lawsuit, but also [] the conduct of the litigation." *Hall v. Cole*, 412 U.S. 1, 15 (1973). A finding of bad faith or improper motive is not a prerequisite to an award of attorneys' fees, but a court "may be influenced by the plaintiff's culpability in bringing or pursuing the action. . . ." *Fantasy, Inc.*, 94 F.3d at 558.

Here, it is clear that Plaintiff engaged in a concerted effort to make the present lawsuit as expensive as possible for Defendants. Plaintiff initially filed suit without reading MIL's screenplay, and named fifty defendants in the action. Some of these defendants had little or no connection to the preparation of MIL's draft screenplays relevant for possible copyright infringement liability. Plaintiff also continually amended her Complaint to avoid a substantive ruling on Defendants' multiple Motions to Dismiss. Between 2008 and 2009, Defendants filed two Motions to Dismiss which were rendered moot after Plaintiff filed amended complaints. Plaintiff's amendments failed to add material allegations, new claims, or clarifications. Plaintiff also filed an Ex Parte Application to Amend the Complaint for a third time in order to avoid a substantive ruling on Defendants' Motion for Judgment on the Pleadings. The Court denied Plaintiff's Ex Parte Application after finding that it "would only serve to delay the case . . ." (Order Granting Defs.' Mot. for J. on the Pleadings at 2). Thus, Plaintiff's tactical decisions served to maximize the cost of the lawsuit.

Accordingly, this factor weighs in favor of awarding attorneys' fees to Defendant.

    *5.*    <u>*The Need for Compensation and Deterrence*</u>

Defendants argue that this factor favors an award of attorneys' fees because Plaintiff should be deterred from advancing meritless claims in the future. Plaintiff contends that the lawsuit was not baseless or motivated by bad faith.

On balance, this factor weighs in favor of granting Defendants attorneys' fees. An award of attorneys' fees should "advance considerations of compensation and deterrence." *See Fantasy*, 94 F.3d at 557. Here, the Court determined that Plaintiff's lawsuit was objectively unreasonable and motivated by bad faith. A fee award is justified in order to deter Plaintiff, and those similarly situated, from prosecuting meritless claims for copyright infringement.

Accordingly, this factor weighs in favor of awarding attorneys' fees to Defendant.

       *6.*    *Weighing the Factors*

After consideration of the factors set out in *Fogerty*, the Court finds that each one supports a fee award. Therefore, Defendants are entitled to an award of attorneys' fees and costs.

## C.    Defendants' Request for Attorneys' Fees and Costs are Reasonable

Having determined that Defendants are entitled to attorneys' fees and costs for defense of the copyright claims, the only remaining issues for the Court to determine are whether Defendants can receive fees and costs incurred defending other claims, and whether the $894,953 in fees and costs requested by Defendants is reasonable.

       *1.*    *Plaintiff's Derivative Claims*

A prevailing party under Section 505 may receive attorneys' fees incurred in defending a copyright claim and any other "related claims." *Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1230 (9th Cir. 1997). Claims are related if they "involve a common core of facts or are based on related legal theories." *Thomas v. City of Tacoma*, 410 F.3d 644, 649 (9th Cir. 2005). Here, Plaintiff's claims for violations of the RICO Act, violation of the Lanham Act, and unfair competition under North Carolina and California law are entirely dependent upon the copyright infringement claims. In each case, the allegation of copyright infringement constitutes an element of each derivative claim. Therefore, Defendants are entitled to attorneys' fees incurred in the defense of these claims because they are sufficiently related to the copyright infringement claims.

       *2.*    *Attorneys' Fees*

The amount of an attorneys' fees award must be reasonable. 17 U.S.C. § 505. The reasonableness of a party's fee calculation is determined by the "lodestar method." *Morales v. San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). Under the lodestar method, the number of hours reasonably expended in litigation are multiplied by a reasonable hourly rate to produce the reasonable fee award. *Id.* The Court may then consider whether to enhance or reduce the lodestar figure based on twelve factors: (1) the time and labor involved; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1995); *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983).

Upon careful review of the billing statements provided by Defendants' counsel, the Court finds that the number of hours expended on the litigation, the hourly rate, and the requested fees are all reasonable.

The Court finds that the amount of time spent litigating the case — a total of 3,278.8 hours — to be reasonable. The parties conducted discovery and researched and prepared two motions to dismiss, a motion for judgment on the pleadings, and a motion for summary judgment. The litigation spanned two years and resulted in 649 docket entries. Moreover, Defendants do not seek to recover fees for 800 hours

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Attorneys' Fees and Costs pursuant to 17 U.S.C. § 505. The Court awards Defendants attorneys' fees and costs in the amount of $894,983.

**IT IS SO ORDERED.**

|  | : |  |
| --- | --- | --- |
| Initials of Preparer | slw |  |

